Albert Leroy **MARTIN** and Rose Ann Martin, Appellees,

v.

The B.F. **GOODRICH COMPANY**, a New York Corporation, Appellant,

The Budd Company, a Michigan Corporation; Hennessey Industries, Inc., a New Jersey Corporation; Don Schmidt d/b/a Don's Standard/Amoco; Amoco Oil Company, a Maryland Corporation; and Melvin F. Reicks d/b/a Big Red's Auto Sales/Parts, Defendants.

No. 97–1518.

Supreme Court of Iowa.

Nov. 17, 1999.

Connie Alt of Shuttleworth & Ingersoll, P.C., Cedar Rapids, and Frank Mandlebaum of Zorn & Mandlebaum, P.C., Troy, Michigan, for appellant.

William J. Bribriesco and Daniel D. Bernstein of William J. Bribriesco & Associates, Bettendorf, and Thomas F. Dasse of Dasse & Vakula, P.C., Scottsdale, Arizona, for appellees.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, SNELL, and TERNUS, JJ.

SNELL, Justice.

This is an interlocutory appeal from a district court order compelling defendant, B.F. Goodrich Company (BFG), to produce documents or information it claims are not in its possession, custody or control. Upon review, we conclude that the record does not support a finding of control sufficient to induce discovery. We reverse the district court order and remand for further proceedings.

## I. Background Facts and Procedural History

In October of 1993, plaintiff, Albert Leroy Martin, requested that a used sixteen-inch B.F. Goodrich tire be mounted onto what he mistakenly believed to be a sixteen-inch wheel. The diameter of the wheel was actually 16.5 inches, and the tire exploded during inflation. Martin was injured in what is commonly referred to as 16/16.5-inch mismatch tire explosion. Martin and his wife, Rose Ann, brought an action to recover damages against BFG alleging the design of the tire was defective and unreasonably dangerous.

The tire in question was manufactured by BFG in 1984. In August of 1986, BFG sold its tire business to two wholly owned subsidiaries, which in turn formed a partnership with the Uniroyal Tire Company. The resulting organization, called the Uniroyal–Goodrich Tire Co., a New York Partnership, retained the name, equipment, facilities and employees of the BFG tire division.

Pursuant to the sale the New York partnership signed an indemnity agreement under which it assumed all liabilities and obligations arising from claims for personal injury relating to the manufacture, sale, handling, distribution or use of any product currently or formerly manufactured, sold or otherwise dealt with by BFG, in connection with the tire business or the discontinued operations. The accord also stipulated that the partnership would either litigate claims on BFG's behalf, or reimburse it for claims it handled on its own. Settlements required partnership approval.

In 1990, Michelin formed a subsidiary known as the Uniroyal–Goodrich Tire Co. Inc., a Delaware Corporation, through which it acquired the assets and liabilities of the New York partnership. In 1995, Michelin merged the Delaware Corporation into Michelin North America (MNA). Tires continue to be manufactured under the B.F. Goodrich name, using the same plants and equipment BFG originally owned.

The plaintiffs initially tried to file a cause of action against Uniroyal–Goodrich, Delaware, but service was refused by Uniroyal's national counsel and by its agents in Iowa and South Carolina. By chance, plaintiffs learned of the merger and served notice on MNA. MNA filed a motion to dismiss claiming that service was untimely and that the statute of limitations had expired. The district court held that plaintiffs made diligent efforts to notify MNA, but that there was insufficient evidence to ascertain MNA's interest in the suit, or Uniroyal's status as an independent entity. MNA was therefore declared a nonparty.

Throughout the pretrial period, plaintiffs sought discovery of information related to the design, testing and modification of the Goodrich tire, as well as data regarding prior lawsuits in which similar claims were defended. All of BFG's records are in the custody of MNA. While MNA has granted access to documents originated prior to August 1, 1986, the date BFG sold its tire business, it has not authorized the release of any documents subsequent to that date, documents BFG never created, possessed or owned.

Plaintiffs filed a motion to compel, arguing that MNA is the real party in interest, that it is in fact controlling the litigation

for BFG, and that it must indemnify BFG for any judgment against it. The plaintiffs further requested answers to interrogatories concerning payment for studies conducted by Standard Testing Laboratory (STL). BFG experts are evidently relying on statistics advanced by STL for their testimony. Although reports of the studies have been delivered, the plaintiffs are seeking to establish that MNA commissioned the tests for the purpose of litigating past claims.

BFG responded that it had no duty to produce records subsequent to August 1, 1986, records which, by definition, were generated or compiled by unrelated corporations. BFG asserts that MNA and STL are not parties to the suit, that it is only obligated to disclose materials in its possession, custody or control, and that it cannot compel MNA or STL to turn over information in which BFG never had a claim or interest. The records in question are therefore out of BFG's control and not subject to discovery.

The district court issued an order directing BFG to relinquish post 1986 documents held by MNA and to respond to the interrogatories pertaining to STL testing. The court based its ruling on the fact that MNA will ultimately be responsible for a judgment against BFG, that it is the real party in interest, and that basic fairness requires it to turn over the information sought. BFG filed the appeal.

## II. Scope of Review

 The district court is afforded wide latitude in ruling upon discovery matters. *Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993). We will not reverse its decision unless there has been an abuse of discretion. *Schaffer v. Rogers*, 362 N.W.2d 552, 555 (Iowa 1985). A reversal of a discovery ruling is warranted when the grounds underlying a district court order are clearly unreasonable or untenable. *State v. National Dietary Research, Inc.*, 454 N.W.2d 820, 822 (Iowa 1990). A finding based on an erroneous

interpretation of a discovery rule can constitute an abuse of discretion. *Shook*, 497 N.W.2d at 885.

## III. Discussion

At issue is whether or not BFG has sufficient control over the post 1986 documents in MNA's possession to compel discovery. Iowa Rule of Civil Procedure 129 provides that a party must produce only those documents or other information which are in the possession, custody or control of the party upon whom the request is served.

BFG posits that the test for determining control is whether it has a legal right to obtain or demand materials held by MNA. See *Searock v. Stripling*, 736 F.2d 650, 653 (1984); see also *Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 140–41 (3d Cir.1988) (collecting cases). The defendant's assertion is based primarily on interpretations of Federal Rule of Civil Procedure 34, the counterpart to our Rule 129, whereunder the courts concur that the concept of control embraces the legal right to obtain information. *Cf. Strom v. American Honda Motor Co.*, 423 Mass. 330, 667 N.E.2d 1137, 1141 (1996) (determining the existence of a legal right to obtain information is the first step toward finding control).

Generally, we agree with this proposition. In *State v. Stratton*, 519 N.W.2d 403 (Iowa 1994), for example, we held that hospital medical records were not under the State's control when they could not be seized by the prosecution or unilaterally procured without a patient waiver. *Stratton*, 519 N.W.2d at 405.

Similarly, in *Foust v. Denato*, 175 N.W.2d 403 (Iowa 1970), Foust, a union president, was directed to appear before the court with documents pertaining to union business. Foust arrived empty handed and was charged with contempt. In a certiorari action, he indicated the records were in the custody of the treasurer, Reed, who claimed them as personal

property and refused delivery. Foust's post with the union was unsalaried, unbonded and did not place him in a position of authority over Reed. The subpoena duces tecum ordering Foust to comply with discovery named him individually and in his capacity as a union official. While it may have been possible for him to have procured the records through an executive committee, the union itself was not subject to the subpoena. As such, we did not believe Foust had sufficient control over the documents to compel discovery. *Foust,* 175 N.W.2d at 406.

In the case at bar, BFG requested, and was denied access to, post 1986 documents and information held or created by MNA and STL. Plaintiffs have asserted no grounds under which BFG can legally demand production. Instead, we are urged to undertake an equitable approach. Martin cites a long line of cases in which courts have sought to establish "constructive control" between parent, sister and subsidiary corporations.

Constructive control is the method by which some courts draw distinctions between corporations that share extensive commonalities or joint interests. Jurists typically strive to determine the extent to which businesses are intertwined in order to verify an actual or effective right to obtain information, as opposed to a legal one.

Constructive control has its genesis in *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), wherein it was held that a foreign corporation bringing suit in the United States could not eschew discovery in deference to foreign secrecy laws. In reaching its decision, the Supreme Court remarked that "Rule 34 is sufficiently flexible to be adapted to the exigencies of particular litigation. The propriety of the use to which it is put depends upon the circumstances of a given case." *Societe,* 357 U.S. at 206, 78 S.Ct. at 1092, 2 L.Ed.2d at 1263. The Court also noted that trans-

ferring ownership of a corporation for the purpose of shielding it behind Swiss secrecy laws would have a vital bearing on justifying a dismissal. *Id.* at 208–09, 78 S.Ct. at 1094, 2 L.Ed.2d at 1265.

*Societe's* progeny have heralded this opinion as a signal that courts should closely scrutinize the relationship between corporations in order to guard against fraud, deceit, sharp practices, inequitable conduct, or other misleading actions designed to make discovery difficult. *See Uniden Am. Corp. v. Ericsson, Inc.,* 181 F.R.D. 302, 306 (M.D.N.C.1998) (interpreting *Societe*).

To that end, constructive control has been found following consideration of factors such as the degree of ownership and control exercised between entities, the reality of the corporate structures, the nature of the transaction giving rise to the suit, the determination as to which party makes the key decisions in litigation, demonstrated access to documents during the ordinary course of business, and the degree to which the nonparty will benefit in the case. *See Uniden,* 181 F.R.D. at 306 (defendant required to produce documents from nonparty sister corporation); *Afros S.P.A. v. Krauss–Maffei Corp.,* 113 F.R.D. 127, 130–32 (D.Del.1986) (subsidiary had requisite control over documents held by parent when the subsidiary was wholly-owned, key litigation decisions were made by parent, and there was a substantial intermingling of management employees and directors); *Strom,* 667 N.E.2d at 1143 (parent, sister and subsidiary corporations were compelled to disclose documents to defendant distributor); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 35 (S.D.N.Y.1984) (agent organization required to produce documents held by its principals); *In re Uranium Antitrust Litig.,* 480 F.Supp. 1138, 1152 (N.D.Ill.1979) (corporate parent forced to produce documents of wholly-owned subsidiaries, but not documents of 43.8%-owned subsidiary).

The doctrine of constructive control, however, has had little application with regard to unrelated companies. This is likely due to the fact that the Supreme Court made a point of distinguishing the situation in *Societe* from one in which documents cease to exist, or are in the possession of a third party not controlled by the party ordered to produce, and without that party's complicity. *Societe,* 357 U.S. at 204, 78 S.Ct. at 1092, 2 L.Ed.2d at 1262–63.

The few courts that have visited the issue of constructive control between independent businesses have been reluctant to compel discovery. In *Searock v. Stripling,* the defendant, Stripling, had his counterclaim dismissed after failing to produce receipts and other documentation for the repair of a boat. The boat had sunk with the records aboard. Stripling suggested that he could acquire copies from various contractors and retailers but met with little success in doing so. On appeal, it was held that Stripling did not have a legal right to demand the records from unaffiliated third parties and thus, did not have control. *Searock,* 736 F.2d at 653–54.

Likewise, in *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420 (7th Cir.1993), plaintiffs released the results of a series of chromatagrams indicating a toxic spill had occurred on their property. They did not, however, turn over the actual tests, maintaining the chromatagrams were owned and held by NET, an outside laboratory, and were, therefore, not within their possession custody or control. The court did not fault the plaintiffs for failing to produce the tests, since they could not order the lab to surrender them. *Chaveriat,* 11 F.3d at 1426.

■ Undeterred, the Martins contend that the relationship between BFG and MNA is analogous to those in which courts have found constructive control. *Searock* and *Chaveriat,* they argue, both dealt with parties ordered to obtain information from wholly independent businesses having no interest in the litigation. Here,

Martins aver that MNA is the indemnitor of BFG, that it will be the ultimate beneficiary of any ruling in the case, that it is controlling the litigation, and that basic fairness dictates it be required to release the documents and information requested.

■ Plaintiffs' arguments are not supported by the record and the facts in this case do not prompt us to contemplate alternative approaches to discovery. First, although parties may contract otherwise, indemnity, in and of itself, does not give rise to a legal right to demand information. *See, e.g., Henderson v. Zurn Indus., Inc.,* 131 F.R.D. 560, 567 (S.D.Ind.1990). Absent a provision to the contrary, indemnity is but one factor some courts consider in divining constructive control.

Second, even if we were to embrace the doctrine of constructive control, the Martins have not adequately corroborated their assertion that MNA is BFG's indemnitor. The only evidence presented to substantiate this allegation is the indemnification agreement between BFG and Uniroyal–Goodrich, a New York partnership. This alone is not significant. No attempt was made to show that BFG actually controlled the New York partnership, and no link was established to prove the existence of similar agreements between MNA and any of the succeeding enterprises it eventually subsumed. MNA may or may not be the ultimate beneficiary in this case. Regardless, there has been no finding that it is required to assist in the litigation or is controlling BFG's strategy.

Lastly, much of the information plaintiffs seek is readily ascertainable through skillful examination of witnesses.

For these reasons we conclude that post 1986 documents held by MNA, those which BFG neither created, possessed or owned, are beyond the scope of discovery. Likewise, information needed to answer the interrogatories regarding payment for the

tests conducted by Standard Testing Labs, information that is in the possession, custody or control of MNA or STL, is also beyond the scope of discovery. The order of the district court is reversed and the matter is remanded for further proceedings consistent with our decision.

**REVERSED AND REMANDED.**