**EXOTICA BOTANICALS, INC.,** Hodge Greenhouses, Inc., Joan D. Cone d/b/a Treehouse Plants, Donald Wayne Simpson d/b/a Ornamental Horticulture, and Gator Growers Nursery, Inc., on Behalf of Themselves and All Others Similarly Situated, Appellees,

v.

**E.I. Du Pont de NeMours & Company, Inc.,** Crawford & Company, Thomas M. Burke, Timothy T. Obrigawitch, Edgar S. Woolard, Jr. and Cabaniss & Burke f/k/a Cabaniss Burke & Wagner, Defendants.

**TERRA INTERNATIONAL, INC.** and Mark Kalafut, Nonparty–Appellants.

Productora de Semillas, S.A., Appellee,

v.

**E.I. Du Pont de NeMours & Company, Inc.,** Crawford & Company, Thomas M. Burke, Timothy T. Obrigatwitch, Edgar S. Woolard, Jr., and Cabaniss & Burke f/k/a Cabaniss Burke & Wagner, Defendants.

Terra International, Inc. and Mark Kalafut, Nonparty–Appellants.

No. 98–559.

Supreme Court of Iowa.

July 6, 2000.

Byron Starns and Mary E. Schwind of Leonard, Street & Deinard, Saint Paul, Minnesota, and Patrick Sealey of Heid-man, Redmond, Fredregill, Patterson, Plaza & Dykstra, Sioux City, for appellants.

Harley S. Tropin and Adam M. Moskowitz of Kozyak Tropin & Throckmorton, P.A., Miami, Florida, and Robert J. Pierson of Mayne & Mayne, Sioux City, for appellees.

McGIVERIN, Chief Justice.

This case involves a question concerning alleged waiver of the attorney work product privilege that was raised in a motion to compel discovery. *See* Iowa R. Civ. P. 122, 134. Iowa attorney Mark Kalafut was served with a subpoena duces tecum, issued by an Iowa district court, ordering him to produce at a deposition certain documents owned by his employer that were in his possession. Kalafut resisted the subpoena in part, arguing that the requested documents constituted attorney work product and were therefore not discoverable. The district court disagreed, finding that by testifying in an unrelated case as to the general subject matter of the requested documents, Kalafut waived any work product privilege that would otherwise preclude discovery of those documents. The district court therefore ordered Kalafut to produce the documents. Kalafut and his employer appealed.

Upon our review, we conclude that although Kalafut disclosed the general subject matter of the requested documents in another case, such limited disclosure does not amount to a waiver of the work product privilege. We therefore reverse the judgment of the district court.

## I. Background facts and proceedings.

### A. Prior litigation.

Appellant, Terra International, Inc. (Terra), markets and sells a line of farm supply products and application services, including fertilizers, crop protection products, and seed. Terra has its principal

place of business in Sioux City, Iowa. Appellant Mark Kalafut is vice-president and general counsel of Terra. Terra also provides product assembly or "formulation" services for other marketers of crop protection products, including for defendant E.I. Du Pont de NeMours & Company, Inc. (Du Pont). Du Pont is a Delaware corporation and is a manufacturer of agricultural products.

From 1988 until 1990, Terra formulated or assembled a fungicide known as Benlate 50 DF (Benlate) at its facility in Arkansas for defendant Du Pont. Benlate is a fungicide designed to control plant disease. Terra's formulation services consisted of mixing raw chemical ingredients supplied by Du Pont with other materials to create Benlate.

In the summer of 1989, Du Pont informed Terra that Du Pont had received a number of complaints from farmers and growers that trees and plants treated with Benlate were suffering damage. Du Pont later informed Terra that Benlate produced by Terra at its plant in Arkansas was allegedly contaminated with the herbicide atrazine and formally demanded that Terra assume liability for property damage and loss resulting from the use of Benlate due to its contamination with atrazine. In the fall of 1989, and pursuant to its indemnification agreement with Du Pont, Terra began to pay claims brought by growers alleging damage from Benlate. Throughout the next year, Terra's insurers paid out more than $60 million to settle claims made by Du Pont customers for damages allegedly caused by Benlate.

The disputes between Terra and Du Pont over claims regarding Benlate eventually led to litigation between those two entities. In a settlement agreement dated October 15, 1990, Terra and Du Pont settled certain disputes concerning problems associated with the use of Benlate.

Growers continued to make claims against Du Pont and Terra alleging dam-age from Benlate. In one particular case, referred to by the parties as the *Du Bose* case, a peach grower sued Terra and Du Pont in South Carolina. Terra and Du Pont retained Dr. Everett Cowett as a consulting expert in that case in 1991. During the course of the *Du Bose* litigation, Kalafut learned from Cowett that atrazine levels in the Benlate formulated by Terra could not have caused the damages that were being alleged by growers. During this same time period, Kalafut learned that Du Pont officials had sent a letter to the federal Environmental Protection Agency in September 1989, which revealed that alleged atrazine contamination on the part of Terra was not the cause of the growers' problems. From this point forward, Cowett worked exclusively for Terra as a consulting expert in Benlate litigation.

In July 1993, a later suit by growers against Du Pont was tried to a jury in Georgia. In that case, which the parties refer to as the *Bush Ranch* case, Kalafut was called by the plaintiffs as a witness. In response to questions asked by plaintiffs' attorneys, Kalafut explained how claims against Du Pont for damage allegedly caused by Benlate contaminated by atrazine were processed and how he learned from Cowett during the 1991 *Du Bose* litigation that atrazine at the levels found in the Benlate could not have caused the damage to the crops.

### B. The present suit.

In June 1997, plaintiffs Exotica Botanicals, Inc. and Productora Semillas, SA (Productora),[1] filed a RICO complaint against Du Pont in Florida state court, alleging that Du Pont manufactured and sold Benlate knowing that the product would cause extensive damage to plaintiffs' plants.

In October 1997, in pursuing discovery in its Florida case against Du Pont, Exotica served Kalafut with a subpoena duces

---

**1.** We will refer to plaintiffs collectively as Exotica unless otherwise indicated.

tecum issued by the Iowa district court.[2] The subpoena ordered Kalafut to appear for a deposition in Iowa to be taken by Exotica and produce a number of documents, including "all documents generated by Everett Cowett relating to his service as an expert witness for you and/or Du Pont, on matters relating to Benlate during 1991 and 1992." The documents sought by Exotica consist of documents generated by Cowett in his capacity either as a consulting expert for Terra, Du Pont, or both, and are referred to by the parties as the "Cowett documents." Kalafut refused to produce the requested Cowett documents, alleging that the documents were privileged and not discoverable under Iowa rule of civil procedure 122(a) because they were work product prepared in anticipation of litigation.

Plaintiffs then moved under Iowa rule of civil procedure 134 to compel production of the Cowett documents. Kalafut and Terra again resisted the motion on the basis that the documents constituted work product and were therefore exempt from plaintiffs' motion to compel. Kalafut also prepared a "privilege log," a collection of the titles of the documents which Kalafut believed were privileged or otherwise exempt from discovery. Kalafut also provided the Iowa district court with copies of the requested documents and the court reviewed them in camera.

Following a hearing on January 5, 1998, the district court sustained plaintiffs' motion and ordered Kalafut to produce the "Cowett documents." Specifically, the court found that by his testimony in the *Bush Ranch* litigation, Kalafut and Terra had waived any privilege attaching to the Cowett documents and, second, that Exotica had shown substantial need for production of the documents. *See* Iowa R. Civ. P. 122(c).

Terra and Kalafut appealed the portion of the court's order requiring production of the "Cowett documents."[3] On plaintiff Exotica's motion to dismiss the appeal, we stated that we would treat Terra's notice of appeal as an application for permission to take an interlocutory appeal and we granted the application.

## II. Standard of review.

■■■ On review of a district court's ruling on a discovery matter, we afford the district court wide latitude. *See Martin v. B.F. Goodrich Co.*, 602 N.W.2d 343, 345 (Iowa 1999). We will reverse a ruling on a discovery matter only for an abuse of discretion. *See Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993). "A reversal of a discovery ruling is warranted when the grounds underlying a district court order are clearly unreasonable or untenable." *Martin*, 602 N.W.2d at 345. "A ruling based on an erroneous interpretation of a discovery rule can constitute an abuse of discretion." *Shook*, 497 N.W.2d at 885.

## III. Work product privilege generally, rule 122(c).

Under Iowa rule of civil procedure 121(b), the rules relating to discovery and inspection "shall be liberally construed and shall be enforced to provide the parties with access to all relevant facts." *Accord Ashmead v. Harris*, 336 N.W.2d 197, 199 (Iowa 1983).

■■■ Pursuant to Iowa rule of civil procedure 122(a), privileged materials are specifically excluded from the scope of permissible discovery. *See Squealer Feeds v. Pickering*, 530 N.W.2d 678, 683 (Iowa 1995). A party resisting discovery through assertion of a privilege has the burden of showing that a privilege exists and applies. *Hutchinson v. Smith Lab.*,

---

**2.** We will refer to Kalafut and Terra collectively as Terra unless otherwise indicated.

**3.** Exotica also sought documents from Terra relating to mediation and settlement of issues between Terra and Du Pont. The district court subsequently ruled that Exotica was not entitled to these documents. Exotica does not challenge that ruling in this appeal.

*Inc.*, 392 N.W.2d 139, 141 (Iowa 1986). An asserted privilege is narrowly construed because it is an exception to our rules governing discovery. *Id.*

Our Iowa rule of civil procedure 122(c) states:

> Subject to the provisions of R.C.P. 125, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (a) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has *substantial need of the materials* in the preparation of the case and that the party seeking discovery is *unable without undue hardship to obtain the substantial equivalent of the materials by other means.* In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Emphasis added.) Our rule 122 is modeled after Federal rule of civil procedure 26(b)(3), which is a codification of the "work product" privilege recognized in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *Shook*, 497 N.W.2d at 886. Cases interpreting federal rule 26(b)(3) provide guidance to us in applying our rule 122. *Ashmead*, 336 N.W.2d at 199.

■ We explained the purpose of the work product privilege as follows:

> The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought pro-

cesses to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents merely on request and use them against his client.

*Shook*, 497 N.W.2d at 888 (quoting *In re Murphy*, 560 F.2d 326, 334 (8th Cir.1977)). The privilege has also been said "to promote the operation of the adversary system by ensuring that a party cannot obtain materials that his opponent has prepared in anticipation of litigation." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir.1997). "The work product doctrine is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." *Id.*

## IV. Terra's disclosures and the district court ruling.

We believe it helpful to identify those disclosures by Mark Kalafut, the general counsel of Terra, upon which the district court relied in finding that Kalafut had waived the work product privilege as to the Cowett documents.

In *Bush Ranch v. E.I. Du Pont de Nemours*, growers brought suit against Du Pont in Georgia state court claiming damages from the use of Benlate. Although neither Terra nor Kalafut were parties in the *Bush Ranch* case, Kalafut was called by plaintiffs to testify during the 1993 trial. In his testimony, Kalafut explained how claims filed by growers against Du Pont alleging damage from Benlate were processed and how he learned from Cowett in the *Du Bose* litigation that the alleged atrazine contamination by Terra could not be the source of the growers' problems. In doing so, Kalafut briefly mentioned Cowett and his opinions regarding Benlate. The relevant excerpts of Kalafut's testimony, along with the court's limiting instructions, are as follows:

> Q. And Dr. Cowett had made known to Du Pont and Terra's lawyer what?
>
> . . . .

THE COURT: The only thing, Mr. Pope, I don't think this witness ought to testify about what the expert said in that trial. I don't see any reason why he should do that.

MR. POPE: Your Honor, I'm not offering—

THE COURT: If he just wants to testify that he learned as a result of the trial, so and so, why ask him that.

. . . .

THE COURT: I'm just not going to allow the witness to quote the so-called expert that you refer to. I'm not going to allow him to quote him. That would be hearsay.

Q. When did you learn that the atrazine thing may have been contrived by Du Pont?

. . . .

A. [Kalafut] In September or sometime in the late summer or fall, probably in the fall, I learned from Mr. Cowett that atrazine at the levels of contamination in the product formulated by Terra could not have caused the damages that were being alleged.

. . . .

Q. Now, as a result of all of this, Mr. Kalafut, what happened? A. As a result, of this, I—as a result of learning the statements of Mr. [Cowett], that atrazine could not have caused the—at the levels involved could not have caused the damage, I decided I would go back and check all correspondence and documents received in Du Pont litigation, and at that point I discovered that that letter was in there. When I'm talking about the letter, I'm talking about the September 12th [1989] letter from Du Pont to the EPA.

. . . .

Q. All right. Did you say to him, Glen [lawyer for Du Pont], we paid out 65 million dollars, and you never told us that you told the EPA that what we were doing wouldn't hurt plants? A. Basically, I indicated to him that we had the information that they had given to the EPA, that we had talked to experts who had told us that it wasn't even close, atrazine wasn't the problem.

The record also contains a letter written by Du Pont attorney Peter Wellington to Kalafut. The letter, dated November 7, 1991, states in pertinent part:

In view of your letter of November 6, 1991,[4] I believe a meeting at this time may be premature. You state that you have information that atrazine, even at the highest levels, could not have caused the damage. In our conversation, you mentioned the opinion of Dr. Cowett in the South Carolina Du Bose litigation and Du Pont information filed with EPA in June 1990. The latter was the best available information at a point in time and for a specific subject. Neither of these seem to me to be sufficient basis for a general statement regarding causation in hundreds of cases over different crops.

Du Pont did not handle most of the Benlate I claims—CIGNA did. . . . Surely the millions of dollars paid out by or on behalf of Terra were done on the basis of scientific causation evidence under your control. . . . .

We understand Terra and XL have suspended all further efforts at claims adjustment on litigation settlement. We are concerned as to the impact of this decision on Du Pont and whether Terra may be in breach of its indemnity obligation. . . .

Based on Kalafut's testimony in the *Bush Ranch* case as quoted above, the district court found that "Kalafut engaged in considerable discussion of Dr. Cowett, including primarily his conclusions regard-

---

**4.** The November 6, 1991, letter by Kalafut referenced in Wellington's letter was apparently written shortly after Kalafut learned in the *Du Bose* litigation of Cowett's opinion that atrazine levels in the Benlate formulated by Terra for Du Pont could not have caused the damages being alleged by growers.

ing the atrazine contamination in Benlate." Additionally, the court found that, based on the November 1991 letter and other communications between Terra and Du Pont, Cowett's work and his specific opinions concerning Benlate contamination "had been widely discussed, injected into various litigation, and otherwise disseminated," and "that this broad based disclosure of this area in the transcripts and other unprivileged documents effectively waives any privilege that might attach to it."

### V. Waiver of the work product privilege.

The parties do not dispute that the Cowett documents constitute work product of Kalafut and Terra and are otherwise protected from disclosure by the work product privilege. The narrow issue we must decide, however, is whether Kalafut's testimony in the *Bush Ranch* case and his comments in discussions with Du Pont attorneys amount to an express waiver of the work product privilege and, if so, whether such waiver extends to the Cowett documents in Kalafut's possession.

### A. Iowa law regarding waiver of privileged information.

In our cases, we have addressed what matters fall under the work product privilege, *see Squealer,* 530 N.W.2d at 686–87, *Shook,* 497 N.W.2d at 887–88, *Ashmead,* 336 N.W.2d at 200–01, but we have never addressed possible waiver of the work product privilege.

We did, however, address waiver of the attorney client privilege in *Miller v. Continental Insurance Co.,* 392 N.W.2d 500, 504–05 (Iowa 1986). In *Miller,* we cited the rule that "voluntary disclosure of the content of a privileged communication constitutes *waiver as to all other communications on the same subject.*" *Id.* (emphasis added). This rule is referred to as subject matter waiver. *See In re Martin Marietta Corp.,* 856 F.2d 619, 623 (4th Cir.1988) (explaining subject matter waiver as a situ-

ation when disclosure of a confidential communication outside a privileged relationship waives the privilege as to all information related to the same subject matter). We held in *Miller* that by making certain disclosures of otherwise privileged information in affidavits, plaintiffs waived the attorney client privilege only as to the communications about the matter actually disclosed in the affidavits. *Miller,* 392 N.W.2d at 505.

Exotica contends that the subject matter waiver rule applies in this case such that Kalafut's testimony in the *Bush Ranch* litigation amounts to a waiver of the work product privilege as to *all* Cowett documents in Kalafut's possession because they involve the same subject matter as the topic of Kalafut's testimony, that is, Cowett's opinion on the Benlate/atrazine contamination. Kalafut, on the other hand, argues that due to the policy differences between the attorney-client privilege and the work product privilege, the subject matter waiver rule does not extend to the work product privilege. Kalafut therefore contends that although he may have waived the work product privilege as to his specific statements in the *Bush Ranch* litigation, that waiver does not extend to all Cowett documents in his possession.

### B. Other authorities concerning waiver of work product privilege.

Other authorities have considered whether the subject matter waiver rule applied in the attorney-client privilege context likewise applies to the work product privilege such that waiver of the work product privilege as to certain matters extends to all other documents in the attorney's possession on that same subject. *See, e.g., United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141, 154 (1975) (stating that defendant, "by electing to present [an] investigator as a witness, waived the [work product] privilege with respect to matters covered in [the investigator's] file"); *Pittman,* 129 F.3d at 988 (stating "that disclo-

sure to an adversary waives work product protection as to items actually disclosed," but rejecting argument that by voluntarily disclosing photographs and measurements of railroad crossing accident scene, defendant waived work product privilege for entire contents of investigator's file; waiver of work product privilege was limited to photographs actually disclosed); *Martin Marietta*, 856 F.2d at 625–26 (holding that by disclosing documents to government, party impliedly waived work product privilege as to all *non-opinion* work product on the same subject matter disclosed, but subject matter waiver rule does not apply to *opinion* work product); *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222–23 (4th Cir.1976) (stating that "broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate" when applied to the work product privilege; holding that subject matter waiver does not extend to case where there has only been inadvertent or partial disclosure and in which no testimonial use has been made of the work product); *United States v. Skeddle*, 989 F.Supp. 917, 921 (N.D.Ohio 1997) (holding that company general counsel's testimony in criminal case against former directors and officers of company did not waive work product privilege as to company's entire investigative file prepared during investigation of claims of self-dealing; company's entire investigative file was not the same subject matter as the limited testimony of counsel); *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 310, 312 (D.D.C.1994) (citing rule that disclosure of documents protected by attorney work product privilege waives the protections of the privilege as to the documents disclosed, but holding that such disclosure does not extend to other work product documents still in the possession of the party asserting the privilege); *Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 16 (D.Mass.1993) (even if inadvertent disclosure of one group of documents waived work product privilege as to those documents, there was no subject matter waiver of privilege as to other groups of documents); 8 Charles A. Wright, Arthur R. Miller & Richard R. Marcus, *Federal Practice and Procedure* § 2016.2, at 245–46 (2d ed.1994) (waiver is limited to matters actually disclosed), § 2024, at 368–69 ("disclosure of some documents does not destroy work-product protection for other documents of the same character"; disclosure of documents to third person does not waive work-product immunity unless disclosure substantially increases the opportunities for potential adversaries to obtain the information).

## C. Analysis.

■ Upon our review, we disagree with the district court's conclusion that Kalafut's testimony in the *Bush Ranch* case and his correspondence with Du Pont attorneys amounts to a waiver of the work product privilege as to the Cowett documents in Kalafut's possession.

When read in context, Kalafut's testimony in the *Bush Ranch* case illustrates that Kalafut was simply providing a summary of the Benlate litigation. While it is true that Kalafut discussed Cowett's opinion that atrazine contamination in Benlate on the part of Terra was not the cause of the growers' crop and tree damage, Kalafut spoke only generally of Cowett's opinions and did not discuss in detail how Cowett had reached his conclusions. In fact, Kalafut's testimony concerning Cowett's opinions and conclusions was limited by the court as indicated above.

We further conclude that the November 7, 1991 letter from Du Pont attorney Wellington to Kalafut likewise does not amount to a waiver by Kalafut of the work product privilege. Again, as illustrated by the excerpts from the record, Kalafut was trying to learn from Du Pont the true nature of the growers' problems with Benlate during the time that Terra was paying the growers' claims on Du Pont's behalf.

It was Kalafut's duty to communicate with Du Pont regarding the Benlate claims and to evaluate Terra's liability in the matter. But to say that Kalafut waived his work product privilege concerning information that might potentially absolve Terra of liability, simply by discussing the general nature of that information with Du Pont, would mean that an attorney could never discuss the positive aspects of his or her case with opposing counsel for fear that such discussion would amount to a waiver of the work product privilege as to all documents supporting that position. If this were the case, settlement negotiations and communication between the parties in general would break down. Such a result would be inconsistent with a commonsense application of the work product doctrine and certainly inconsistent with the goal of resolving cases in a timely manner.

We therefore believe that Kalafut's testimony in the *Bush Ranch* case and his comments in a November 6, 1991 letter to Du Pont concerning Cowett's opinions, and the other items referred to by the district court, do not amount to such a waiver of the work product privilege so as to require production of the detailed Cowett documents in Kalafut's possession. Those documents continue to be protected from discovery under the work product privilege. We thus conclude that the district court abused its discretion in ordering Kalafut to produce the Cowett documents on the basis of waiver of the work product privilege.

## VI. Substantial need and undue hardship.

We next must consider whether the district court correctly concluded that Exotica made the proper showing concerning substantial need and undue hardship to entitle it to discovery of the Cowett documents under Iowa rule of civil procedure 122(c).

### A. Applicable law.

With respect to discovery requests, we have said:

A motion to compel production of documents under rule 122 does not necessarily fail when a court decides the documents were prepared in anticipation of litigation. The decision merely triggers the burden of "showing that the party seeking discovery has *substantial need* of the materials in the preparation of his case and that he is unable *without undue hardship* to obtain the substantial equivalent of the materials by other means."

*Ashmead*, 336 N.W.2d at 201 (emphasis added) (quoting Iowa R. Civ. P. 122(c)).

█ We have said that the party [Exotica] seeking discovery bears the burden to show that he or she has a "substantial need of the materials in the preparation of [the] case and that [the party] [was] unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Shook*, 497 N.W.2d at 888 (quoting Iowa R. Civ. P. 122(c)). This means that the party seeking discovery, at the very least, "must make an independent discovery effort to obtain the same information. [The party] must show that [the party] has interviewed these witnesses or deposed them without success." *Id.* We have also said that the party must "demonstrate that the information contained in the documents prepared . . . could not be obtained through a review of the . . . documents already produced . . ., the depositions of the persons responsible for making the denial decision or any other source." *Squealer*, 530 N.W.2d at 688.

### B. Analysis.

█ In its ruling, the district court concluded that Exotica had shown a substantial need to discover the Cowett documents, but did not examine or address whether Exotica had shown that it was "unable without undue hardship to obtain the substantial equivalent of the materials by other means" as required by Iowa rule of civil procedure 122(c). Nor did the court comment on what efforts Exotica had made to obtain the Cowett documents

from another source. *See Shook*, 497 N.W.2d at 888 (stating that party seeking discovery, at the very least, must make an independent discovery effort to obtain the same information). Upon our review and without unduly extending this opinion, we are not convinced that Exotica has made the proper showing under rule 122(c). We reverse the district court's decision on this issue.

As to other issues raised on appeal, we conclude they either were not preserved or have no merit.

### VII.   Disposition.

We conclude that the district court abused its discretion in ordering production of the Cowett documents in Kalafut's possession. Those documents remain protected from disclosure under the work product privilege. Accordingly, we reverse the decision of the district court.

**REVERSED.**

All justices concur except NEUMAN, J., who takes no part.