WATERMAN, Justice (dissenting).
I respectfully dissent and would hold the district court abused its discretion by compelling the deposition of Gelita's trial counsel Ruth Horvatich and production of her notes prepared in anticipation of litigation.
First, Gelita never waived its attorney-client privilege or work-product protection by pleading or arguing the Faragher - Ellerth defense in district court. That defense was based solely on Mr. Fenceroy's failure to use Gelita's reporting procedures during his employment, before he retired and filed his discrimination complaint. The majority, contrary to precedent, finds that Gelita impliedly waived the confidentiality of its lawyer's private notes and client communications by including this sentence in its lengthy brief supporting its motion for summary judgment: "Even though Plaintiff was no longer with Gelita at the time of his Complaint, in response to his charge, the Company investigated his allegations, discharged one employee, and disciplined three others." I disagree that sentence constitutes an implied waiver. Gelita never relied on confidential attorney-client communications in asserting its defenses. Gelita was not using the attorney-client privilege as both a sword and shield and never blocked proper discovery into a matter it placed at issue.
Second, even if it was a waiver, Gelita clearly has retracted it. The majority questions that a retraction has occurred but allows Gelita the opportunity to retract the waiver on remand. I think this is unnecessary based on a fair reading of the record and Gelita's appellate briefs.
Third, the majority also misses the opportunity to adopt the showing required under Shelton v. American Motors Corp. , 805 F.2d 1323, 1327 (8th Cir. 1986), and confirm that compelling depositions of opposing trial counsel during litigation should be a rare last resort, even when *250 information might be obtained that is not subject to a privilege. This aspect of the court's ruling could lead to a flurry of depositions of opposing counsel and a corresponding decline in civility in the Iowa bar. Frequently, both plaintiff's counsel and defendant's counsel have various nonprivileged interactions with others in the course of working on a case. The majority leaves the door open to each side deposing the other on these interactions. I would not do this. Fenceroy is not entitled to depose Gelita's trial attorney Horvatich under Shelton.
I. Gelita Never Impliedly Waived Its Attorney-Client Privilege or Work-Product Protection.
The majority makes it too easy to find an implied waiver of the attorney-client privilege and work-product doctrine. There was no such waiver here. Gelita never listed attorney Horvatich as a witness. See Squealer Feeds v. Pickering , 530 N.W.2d 678, 684-85 (Iowa 1995), abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc. , 690 N.W.2d 38, 48 (Iowa 2004). Gelita never disclosed any privileged communications from Horvatich in responding to Fenceroy's claims. See Miller v. Cont'l Ins. , 392 N.W.2d 500, 504-05 (Iowa 1986). Nor did Gelita rely on Horvatich's 2013 investigation to support its Faragher - Ellerth defense. Rather, Gelita made clear this defense is based on Fenceroy's failure to utilize Gelita's complaint and antidiscrimination reporting policy and procedures. It is undisputed that Fenceroy's employment ended before he filed his discrimination complaint. Gelita did not place Horvatich's legal advice at issue through fleeting references to her investigation conducted after Fenceroy retired and the subsequent termination or discipline of several employees. The cases relied on by the majority are distinguishable for that reason-in the cases finding an implied waiver, the employer was relying on the reasonableness of its counsel's investigation conducted while the plaintiff was still employed. Not so here.
The majority primarily relies on Harding v. Dana Transport, Inc. , 914 F.Supp. 1084 (D.N.J. 1996), while Gelita relies on cases such as Treat v. Tom Kelley Buick Pontiac GMC, Inc. , No. 1:08-CV-173, 2009 WL 1543651 (N.D. Ind. June 2, 2009). Treat is on point while Harding is not.
In Harding , two employees filed an administrative complaint alleging sexual discrimination; one employee filed her complaint while still employed, unlike Fenceroy. 914 F.Supp. at 1087 & n.2. The employer hired outside counsel to investigate their allegations. Id. at 1088. The employees later resigned and filed a Title VII claim. Id. at 1087 & n.2. In the Title VII lawsuit, the employer's counsel admitted that he intended to use the investigation as evidence the employer acted reasonably. Id. at 1088. The defense attorney stated,
Dana is not submitting any of the specifics of [the attorney's] investigation as a basis of defense in this matter. Dana merely intends to offer the fact that [the attorney] did conduct an investigation as part of his representation of Dana in response to allegations filed with the Division on Civil Rights. Whether this investigation, coupled with other actions taken on behalf of Dana in the context of the facts in this case, constitutes evidence of reasonable conduct on the part of Dana is a jury question , but does not compel disclosure of the specifics of [the attorney's] investigation.
Id. at 1093 (emphasis added). The Harding court concluded the employer had put counsel's investigation at issue, waiving its attorney-client privilege. Id. at 1096. Other *251 decisions relied on by the majority are distinguishable for the same reasons.[1]
By contrast, in Treat , three employees filed an administrative complaint after their employment ended, as did Fenceroy. 2009 WL 1543651, at *1, *13. The employer hired outside counsel to conduct an investigation. Id. at *6. The employer used the attorney's investigation during the EEOC proceeding but did not rely on the investigation in district court. Id. at *7, *13. The Treat court distinguished Harding and found that the investigation was not put at issue and was not discoverable. Id. at *12-13. The Treat court reasoned,
[I]t has been fleshed out during the discovery process that Kelley's defense is not that it acted reasonably upon learning of the Plaintiffs' complaints, but rather that the Plaintiffs did not take advantage of Kelley's policies in reporting harassment and discrimination. In other words, because the Plaintiffs allegedly did not report their complaints during their employment, there is no internal investigation of any complaints to rely upon; the only investigation (conducted by outside counsel) was for the purpose of preparing for litigation, once the EEOC charges were filed.... Thus, because Kelley is not actually relying on the adequacy of any investigation to support an affirmative defense, Kelley has not placed outside counsel's investigation at issue.
Id. at *13 (emphasis added). That is what we have here.
Other courts have likewise rejected implied waiver claims under the Faragher - Ellerth defense when, as here, the employer confirms it is not relying on the lawyer's investigation but rather the employee's failure to use the employer's complaint procedures. See, e.g. , Robinson v. Vineyard Vines, LLC , 15 Civ. 4972 (VB)(JCM), 2016 WL 845283, at *5 (S.D.N.Y. Mar. 4, 2016) ("Given these representations by Defendants' counsel, I find that Defendants have not waived any privilege as to the Investigative Documents by asserting the [ Faragher - Ellerth ] Defense."); Geller v. N. Shore Long Island Jewish Health Sys. , No. CV 10-170(ADS)(ETB), 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) (denying motion to compel because "defendants' counsel has affirmatively represented to the Court that defendants have no intention of 'using the investigation to avoid liability' "); City of Petaluma v. Super. Ct. , 248 Cal.App.4th 1023, 204 Cal.Rptr.3d 196, 201-02, 207 (2016) (holding there was no waiver of attorney-client privilege or work-product protection when the employer was not relying on the postemployment investigation but instead was arguing that the employee "unreasonably failed to take advantage of any preventative or corrective opportunities"); see also McGrath v. Nassau Cty. Health Care Corp. , 204 F.R.D. 240, 244-45 (E.D.N.Y. 2001) (rejecting the argument "that employers put any post-harassment investigation conducted at issue simply by invoking the Faragher - Ellerth defense" because the proposition "would eviscerate both the attorney-client *252 privilege and the work product doctrine" while concluding that this employer did put the sufficiency of its investigation at issue); cf. EEOC v. Rose Casual Dining, L.P. , No. Civ.A. 02-7485, 2004 WL 231287, at *3-4 (E.D. Pa. Jan. 23, 2004) (concluding that plaintiff was entitled to documents related to the employer's internal investigation because the employer "raised the reasonableness of its internal investigation as an affirmative defense to [p]laintiff's allegations" but denying plaintiff's motion to compel documents generated from second investigation that began only after the plaintiff had been terminated).
As the great weight of authority shows, the majority errs by concluding Gelita waived its attorney-client privilege and work-product protection merely by pleading the Faragher - Ellerth defense and referring to its postemployment investigation in the agency proceedings and summary judgment filings. In Exotica Botanicals, Inc. v. Terra International, Inc. , we held that a lawyer's general testimony regarding his investigation in prior litigation and related communications with an adverse party did not waive work-product protection. 612 N.W.2d 801, 809 (Iowa 2000). We concluded the district court abused its discretion by compelling production of documents constituting work product. Id. We emphasized the adverse consequences that would result if courts could find a waiver of work-product protections merely because the lawyer "discuss[ed] the general nature of ... information" relevant to liability with an opposing party:
It was [attorney] Kalafut's duty to communicate with Du Pont regarding the Benlate claims and to evaluate Terra's liability in the matter. But to say that Kalafut waived his work product privilege concerning information that might potentially absolve Terra of liability, simply by discussing the general nature of that information with Du Pont, would mean that an attorney could never discuss the positive aspects of his or her case with opposing counsel for fear that such discussion would amount to a waiver of the work product privilege as to all documents supporting that position. If this were the case, settlement negotiations and communication between the parties in general would break down. Such a result would be inconsistent with a commonsense application of the work product doctrine and certainly inconsistent with the goal of resolving cases in a timely manner.
Id.
The majority's decision today conflicts with Exotica Botanicals . Iowa lawyers should not have to worry that they will waive privilege or work-product protections simply by general references to their investigation or their client's position.
II. Gelita Already Retracted Any Alleged Waiver.
The majority correctly acknowledges that a party who waived the attorney-client privilege by asserting a particular defense can retract the waiver. See Squealer Feeds , 530 N.W.2d at 685. In Squealer Feeds , an employee alleged the workers' compensation insurer acted in bad faith. Id. at 680, 683. The defendant asserted a defense of the advice of counsel from the attorney who defended the workers' compensation claim and listed that attorney as an expert witness for trial. See id. at 680-81. We held the defendant thereby waived the attorney-client privilege as to his advice on that issue, but we also made clear the defendant could undo the waiver by withdrawing the lawyer as a trial witness. Id. at 684-85 (noting a withdrawal of the witness designation would "reestablish the attorney-client privilege"). Gelita never *253 listed its outside counsel, Horvatich, as a witness. In any event, Gelita has clearly retracted any implied waiver.
In its opening brief on appeal, Gelita confirmed that it was not relying on its attorney's investigation to support a Faragher - Ellerth defense:
In this case, the Faragher - Ellerth defense is based on Fenceroy's unreasonable failure to take advantage of preventative and corrective opportunities available during his employment. Defendants are not relying upon any investigation conducted by defense counsel after Fenceroy filed his discrimination charge. Those complaints were not made by Fenceroy during his employment and therefore, the adequacy of that investigation and remedial action undertaken by the Company are not "at issue" nor are they part of Gelita's Faragher - Ellerth affirmative defense.
Appellants' Final Br. 14. Gelita made the same point in its reply brief:
Defendants' Faragher - Ellerth defense is not that it conducted a reasonable investigation after receiving the ICRC charge, but that Plaintiff failed to report the alleged conduct during his employment and thus failed to take advantage of the Company's policies on reporting harassment and discrimination. Any investigation and remedial response undertaken after Complainant left his employment and filed his ICRC charge is simply not necessary to Defendant's Faragher - Ellerth defense and, as such, is not at issue.
Appellants' Final Reply Br. 2-3. Because Gelita has already withdrawn any alleged implied waiver, the district court on remand should grant Gelita's motion for protective order. The majority seemingly agrees in principle, but wants Gelita to put its withdrawal on the record when this case returns to district court. I do not think that is needed, although in the long run it should not make a difference.
III. Fenceroy Failed to Show He Was Entitled to Depose Gelita's Trial Counsel.
The majority opens the door to compelling the depositions of opposing counsel in pending lawsuits. Compelled depositions of opposing counsel have long been disfavored. See Hickman v. Taylor , 329 U.S. 495, 511-13, 67 S.Ct. 385, 393-95, 91 L.Ed. 451 (1947). We previously allowed a deposition of plaintiffs' counsel only after the plaintiffs waived attorney-client privilege by testifying about their reliance on his specific legal advice to them on the statute of limitations. Miller , 392 N.W.2d at 505. We framed the issue as "whether plaintiffs may disclose a privileged attorney communication ... and then invoke a privilege to prevent disclosure of other communications by the attorney about the same matter." Id . at 504. We concluded the "voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject." Id . at 504-05. That is not what Gelita did. Gelita disclosed no privileged communications by Horvatich to support its Faragher - Ellerth defense. Miller is inapposite.
Two years after Miller , the United States Court of Appeals for the Eighth Circuit in Shelton addressed the circumstances under which the district court may compel the deposition of the opposing party's trial counsel. 805 F.2d at 1327. The Shelton court required a showing that
(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged [or the privilege has been waived]; and (3) the information is crucial to the preparation of the case.
*254 Id. (citation omitted). We should follow Shelton , and I would adopt it now. Because Fenceroy cannot satisfy this test, the district court abused its discretion by compelling the deposition of Horvatich.
The Shelton rule has been widely adopted by state and federal courts as the standard for determining whether a litigant may compel the deposition of opposing trial counsel. Id. ; Nationwide Mut. Ins. v. Home Ins. , 278 F.3d 621, 628 (6th Cir. 2002) ; Thiessen v. Gen. Elec. Capital Corp. , 267 F.3d 1095, 1112 & n.15 (10th Cir. 2001) (citing Boughton v. Cotter Corp. , 65 F.3d 823, 830 (10th Cir. 1995) ); 3M Co. v. Engle , 328 S.W.3d 184, 188 & n.15 (Ky. 2010) (citing McMurry v. Eckert , 833 S.W.2d 828, 830 (Ky. 1992) ); Club Vista Fin. Servs. v. Eighth Judicial Dist. Ct. , 128 Nev. 224, 276 P.3d 246, 250 (2012) (en banc); Estate of Mikulski v. Cleveland Elec. Illuminating Co. , No. 96748, 2012 WL 504505, at *4 (Ohio Ct. App. Feb. 16, 2012) ; Voorhees Cattle Co., LLP v. Dakota Feeding Co., LLC , 868 N.W.2d 399, 407 (S.D. 2015).
The parties briefed and argued Shelton here. Yet the majority, without expressly accepting or rejecting Shelton , declines to address the showing required to depose a party-opponent's trial counsel during a lawsuit. The majority assumes Gelita will reconfirm its retraction of any alleged reliance on Horvatich's investigation when the case returns to district court and that the district court will then preclude her deposition. Presumably so. The problem is that the majority today is affirming the district court's order compelling Horvatich's deposition based on the existing district court record. The majority thereby blesses the overly aggressive practice of compelling the deposition of opposing trial counsel without a proper showing of necessity.
Fenceroy cannot meet any of the three Shelton requirements. First, Gelita already provided Fenceroy with the statements taken from the witnesses Horvatich interviewed, and Fenceroy deposed those witnesses. Fenceroy could explore why Gelita terminated one employee and disciplined others by deposing the decision-maker, Jeff Tolsma, Gelita's Vice President of Business Support. Fenceroy has not shown why those sources of information are inadequate, much less demonstrated that a deposition of Horvatich is his only means to obtain discovery on Gelita's investigation and resulting actions. A mere allegation of need is insufficient. Cf. Iowa R. Civ. P. 1.503(3) ; Squealer Feeds , 530 N.W.2d at 688-89 (requiring party seeking work product to demonstrate the information could not be obtained by reviewing records already produced, depositions of the company decision-maker, or other nonprivileged sources). Second, Horvatich's communications remain privileged, with any alleged implied waiver retracted. Third, Fenceroy has not shown that Horvatich's testimony is crucial or even relevant to his case.
I fear that the majority's failure to clarify the showing required to depose opposing trial counsel could lead to increasingly aggressive litigation tactics that undermine the professionalism and civility of our trial bar and needlessly increase the costs and burdens of pretrial discovery.
Going forward, I also fear today's decision will have a chilling effect on the routine practice of retaining outside counsel to investigate discrimination claims. If the employer's lawyer can be deposed by plaintiff merely because the employer pleads a Faragher - Ellerth defense, will two different law firms have to be retained-one to investigate and the other to try the case? Will employers limit what they tell their lawyer who may be compelled to testify by the litigation adversary? Or will some employers be reluctant *255 to retain a lawyer who might be compelled to provide adverse testimony? Will such employers lose the benefit of sound legal advice that would otherwise help them improve compliance with employment laws?
Our legal system venerates the attorney-client privilege for vitally important reasons:
The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.
Upjohn Co. v. United States , 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (citation omitted). Discouraging use of lawyers will undermine the primary purpose of our civil rights laws-to avoid discrimination in the workplace. See Faragher v. City of Boca Raton , 524 U.S. 775, 805-06, 118 S.Ct. 2275, 2292, 141 L.Ed.2d 662 (1998) ("Although Title VII seeks 'to make persons whole for injuries suffered on account of unlawful employment discrimination,' its 'primary objective,' like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm." (quoting Albemarle Paper Co. v. Moody , 422 U.S. 405, 417-18, 95 S.Ct. 2362, 2371-72, 45 L.Ed.2d 280 (1975) ) ); cf. Haskenhoff v. Homeland Energy Sols., LLC , 897 N.W.2d 553, 578 (Iowa 2017) ("Employers would lose a key incentive to take corrective action if they were automatically liable for harassment whether or not they put a stop to it."). We should encourage employers to retain counsel to investigate, prevent, and help remedy discrimination. The majority today instead discourages the use of employment lawyers by allowing adverse litigants to easily invade the confidentiality so important to the attorney-client relationship.
For these reasons, I respectfully dissent.
Mansfield and Zager, JJ., join this dissent.

See Angelone v. Xerox Corp. , No. 09-CV-6019, 2011 WL 4473534, at *1-3 (W.D.N.Y. Sept. 26, 2011) (concluding that documents relating to internal investigation completed before employee filed an administrative complaint were discoverable because employer invoked the Faragher -Ellerth defense, but recognizing that documents created after the conclusion of the internal investigation were not discoverable as long as the company does "not refer to or rely on these ... documents or the adequacy of [the later] investigation"); Walker v. County of Contra Costa , 227 F.R.D. 529, 535 (N.D. Cal. 2005) (finding that the employer intended to rely on attorney's investigation as a defense and therefore "must turn over [the attorney's] report as it pertains to the pre-litigation investigation into [the employee's] claim of discrimination").