872 P.2d 708

STATE of Idaho, Plaintiff–Respondent,

v.

Jose Alphonso MARTINEZ,
Defendant–Appellant.

No. 19254.

Supreme Court of Idaho.

April 7, 1994.

Van G. Bishop, Nampa, for appellant.

Hon. Larry EchoHawk, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent. Lynn E. Thomas argued.

TROUT, Justice.

This is an appeal from a murder conviction. Jose Alphonso Martinez (Martinez) was charged with and convicted by a jury of first degree murder. Martinez was sentenced to an indeterminate period of incarceration up to life. A motion for a new trial was denied. Martinez appeals from the conviction as well as from the denial of the motion for a new trial. We affirm.

### BACKGROUND AND PRIOR PROCEEDINGS

In December 1989, on indictment by a grand jury, Martinez was charged with the June 1979 murder of Troy Vance (Vance). Charges were initially brought by complaint against Martinez and Robert Richard Jones (Jones) in October 1980 but were dismissed in February 1982. In October 1989, Sherry Wystrach (Wystrach), Jones' former wife,

came forward with vital evidence concerning the Vance murder. As a result, Martinez, Jones, Donna Cordell (Cordell) and Rebecca Lewis Spalding (Spalding) were indicted for first degree murder. Wystrach testified at Martinez' grand jury indictment and at his trial.

Martinez pled not guilty. Martinez' motion to dismiss the indictment on grounds of prosecutorial misconduct in presenting evidence to the grand jury and preaccusatory delay of nine years was denied. Martinez also moved to preclude certain testimony, namely that of Spalding, on the grounds that she was his common law wife and therefore not a competent witness and to preclude certain hearsay testimony of Wystrach on the grounds that she was a co-conspirator and that there was insufficient evidence independent of her hearsay testimony to establish a conspiracy. This motion was denied and both Spalding and Wystrach were permitted to testify.

At trial, the State wove its theory that Martinez and Jones were hired by Cordell to kill Vance for twenty or thirty thousand dollars. Wystrach's testimony was integral to the prosecution's case, providing first-hand knowledge of the murder plan and payoffs. Wystrach testified that she and Jones made their living by selling drugs and committing burglaries. She testified that she was present during several meetings between Cordell and Jones at which information and money were exchanged. Wystrach also testified that she and Jones became friends with Martinez; that Martinez and Spalding lived with Jones and Wystrach during the period of these meetings and that during this time, Jones and Martinez regularly left at about dusk and would be gone up to several hours. Wystrach testified that during this time, Martinez, Jones and Wystrach drove past the victim's house on at least one occasion. She testified that on the night of the murder, Jones and Martinez prepared and cleaned guns; they left the house at about 10:00–10:30 p.m. and were gone four to five hours. Wystrach testified that of the money paid, $15,000 went to Martinez and $15,000 was to go to Jones and Wystrach. Wystrach testified that after the murder, Wystrach threatened Cordell with death if she told anyone that Jones had a partner in the murder and that Martinez threatened Wystrach with death if she were to speak about "the Vance case."

Wystrach's testimony was corroborated by that of Spalding, who testified Martinez had a job in Caldwell that would pay $15,000; he went from Blackfoot to Caldwell for the job; he told her the job was taking longer than planned and sent for her to come to Caldwell. Spalding testified that Martinez and Jones would leave the house each evening at the same time and return at the same time, except for the night of the murder, which she testified was a few days before July 4, 1979, on which night they returned much later, and after that night they did not leave again in the evening. Spalding also testified the night of the murder, Martinez returned home and announced that he would be leaving immediately for Mexico and that after the murder, Martinez was in possession of a large amount of cash.

Wystrach's testimony was further corroborated by testimony of George Florence (Florence). Florence was a property owner who lived near the victim. He testified that about two weeks before the murder he saw Jones and Martinez in a van parked at the end of a cul-de-sac near his house. Florence was suspicious because there had recently been a burglary in the neighborhood and he recorded the license number of the van.

The issues that this Court must address include:

I. Whether Martinez was prejudiced in the grand jury proceedings by the use of false, misleading, and privileged testimony such that the indictment should be dismissed.

II. Whether the trial court erred in permitting Spalding to testify against Martinez.

III. Whether the trial court erred in admitting the testimony of Wystrach.

IV. Whether Martinez was deprived of due process because of preaccusatory delay.

V. Whether the trial court erred in failing to designate Spalding as an accomplice.

VI. Whether the trial court erred in denying Martinez a new trial based on newly discovered evidence regarding Wystrach.

VII. Whether the cumulative error doctrine requires reversal.

## ANALYSIS

### I.

### MOTION TO DISMISS THE GRAND JURY INDICTMENT

Martinez first argues that during the grand jury proceedings, the prosecuting attorney deliberately elicited and allowed illegal and misleading testimony from its key witness, Wystrach. Martinez argues that Wystrach's testimony was hearsay and the prosecution failed to present sufficient independent evidence of a conspiracy to take Wystrach's testimony out of the hearsay exclusion and that absent Wystrach's hearsay testimony, there was insufficient evidence to support an indictment against Martinez.

The false and misleading testimony allegedly concerned evidence of a hair found at the crime scene purportedly matching that of Jones and certain fingerprints found at the scene. According to Martinez, the prosecution failed to relate to the grand jury that microscopic hair comparisons do not constitute a positive means for personal identification. Further, the prosecution told the grand jury that there were no fingerprints of any value found at the crime scene and failed to advise the grand jury that there were 12 latent fingerprints found at the scene, none of which matched the fingerprints of either of the defendants. With regard to the gun allegedly used in the murder, the prosecution failed to advise the grand jury that possible usable prints recovered from unfired rounds in the gun showed no link between those prints and those of Martinez or his co-defendant. Martinez argues that the failure by the prosecution to provide this additional information regarding the hair and fingerprints caused the grand jury to believe there was much more incriminating value to the evidence than there really was.

The law governing grand jury indictments derives from numerous statutes and rules. Idaho Code § 19–1107 states that "[t]he grand jury ought to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury." Idaho Code § 19–1105 describes the type of evidence the grand jury may consider:

In the investigation of a charge for the purpose of either presentment or indictment, the grand jury can receive any evidence that is given by witnesses produced and sworn before them except as hereinafter provided, furnished by legal documentary evidence, the deposition of a witness in the cases provided by this code or legally admissible hearsay. . . .

Idaho Criminal Rule 6(f) states that "[i]n the investigation of a charge for the purpose of either presentment or indictment, the grand jury can receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence." Section (h) states that "[i]f it appears to the grand jury after evidence has been laid before them that there is probable cause to believe an offense has been committed and the accused committed it, the jury ought to find an indictment." I.C.R. 6(h).

■ Our inquiry into the propriety of the grand jury proceeding is two-fold. First, we must determine whether, independent of any inadmissible evidence, the grand jury received legally sufficient evidence to support a finding of probable cause. *State v. Jones,* 125 Idaho 477, 873 P.2d 122 (1994); *State v. Edmonson,* 113 Idaho 230, 743 P.2d 459 (1987). Second, even if such legally sufficient evidence were presented, the indictment must be dismissed if the prosecutorial misconduct in submitting illegal evidence was so egregious as to be prejudicial. *Jones,* 125 Idaho 477, 873 P.2d 122; *Edmonson,* 113 Idaho at 236–237, 743 P.2d at 465–466. In *Edmonson* we described "prejudicial effect" as meaning "the defendant would not have been indicted but for the misconduct." 113 Idaho at 237, 743 P.2d at 466. Absent a showing of prejudice by the defendant, we will not second guess the grand jury. To

determine whether misconduct gives rise to a dismissal, an appellate court must balance the gravity and seriousness of the misconduct with the sufficiency of the evidence supporting the indictment. *Id.* at 237, 743 P.2d at 466.

██ Applying the first prong of our inquiry, we hold that, even assuming that some of Wystrach's testimony was inadmissible hearsay, and that other, illegal evidence was presented to the grand jury, the grand jury heard sufficient legal evidence to support the indictment. The grand jury had before it additional detailed testimony from Wystrach which was admissible. Wystrach testified that she and co-defendant Jones were solicited and received money to murder the victim; that she, Jones and Martinez watched the victim's house prior to the murder; about Jones' and Martinez' preparations on the night of the murder and about their absence during the critical hours of the murder; and about the disposition of the payoff received by her at a final meeting with Cordell. In addition, Florence offered testimony placing Martinez near the crime scene shortly before the murder occurred. This is sufficient independent evidence to support a finding of probable cause and therefore this Court will not set aside the indictment. *See State v. Jones,* 125 Idaho 477, 873 P.2d 122.

Turning to the second prong of our inquiry, Martinez has failed to affirmatively show that, but for the illegal evidence, he would not have been indicted. *Edmonson,* 113 Idaho at 237, 743 P.2d at 466. Given the evidence outlined above, which independently supports the indictment, Martinez has failed to show that the prosecution's actions with regard to the hair sample and fingerprint evidence, even if misleading, warrant this Court's setting aside the indictment. *See State v. Jones,* 125 Idaho 477, 873 P.2d 122.

## II.

## SPALDING'S TESTIMONY

Martinez argues that Spalding should have been precluded from testifying against him because she is his common-law wife. Martinez relies on a ruling made by the district court in 1980, when he was initially charged in this murder, when a challenge to the competency of Spalding to testify was made. According to Martinez, at that time the district court ruled that Spalding's testimony was not admissible because I.C. § 19–3002 prohibited a wife from testifying against her husband without his consent. Martinez argues that he is still the common-law husband of Spalding and that based on the district court's 1980 ruling precluding her testimony, the prosecution should have been collaterally estopped from presenting Spalding's testimony against him.

The trial court rejected Martinez' attempt to preclude Spalding's testimony based on her alleged status as his common-law wife and permitted her to testify. The court based its ruling on two grounds. First, the court found that, at the time of the murder, Spalding was married to someone else, based on a divorce decree before it showing that Spalding did not receive a divorce from her previous husband until June 29, 1979, two days after the murder involved in this case. The court found that Spalding was not married to Martinez while she was married to someone else.

Second, the trial court held that Rule 601 of the Idaho Rules of Evidence removed any incompetency of a spouse to testify, except to the extent provided for in Rule 504 regarding confidential communications during marriage. The court noted that Rule 601 conflicted with I.C. § 19–3002, involving incompetence, but held that under Rule 1102 of the Rules of Evidence, I.C. § 19–3002 was of no force or effect and that Rule 601 had done away with I.C. § 19–3002.[1]

---

1. Based on these determinations, the court denied the motion for new trial, stating that Spalding was competent to testify and that it considered whether she was married to Martinez to be "moot" because of Rule 601. The court also denied defendant's amended motion to suppress Spalding's testimony specifically on the basis of confidential communications to the extent they related to statements or observations prior to June 29, 1979, when Spalding was still married to someone else. In sum, the court found that Rule 601 precluded any incompetence and that any claim of privilege, vis-a-vis Rule 504, would result in preclusion of only confidential commu-

We find no error in the court's admission of Spalding's testimony. First, Martinez has presented this court with no viable proof of or argument that the trial court's determination that Spalding was married to someone else until June 29, 1979, was incorrect. The only evidence submitted by him in the record is his affidavit to the effect that there was a common law marriage between Spalding and him at the time of the alleged murder which had not changed through divorce. This affidavit, however, cannot refute the evidence before the trial court that Spalding was married to someone else until June 29, 1979.

Second, we hold that Rule 601 of the Idaho Rules of Evidence repealed I.C. § 19–3002.[2] Competency is an evidentiary matter over which this Court exercises control under the Rules of Evidence. Thus, Rule 601 clearly takes precedence over I.C. § 19–3002 by virtue of Idaho Rule of Evidence 1102.[3] *See also State v. Zimmerman,* 121 Idaho 971, 974, 829 P.2d 861, 864 (1992) (statutory provisions, to the extent they are evidentiary and in conflict with Idaho Rules of Evidence, are of no force or effect); *State v. Griffith,* 97 Idaho 52, 539 P.2d 604 (1975) (legislature need not repeal statutes made unnecessary by, or in conflict with, rules promulgated by Supreme Court governing procedure).

We also reject Martinez' collateral estoppel argument. The 1980 decision was not a final judgment from which there was a right to appeal which could warrant collateral estoppel effect. *State v. Powell,* 120 Idaho 707, 819 P.2d 561 (1991). The ruling was simply an evidentiary ruling which could have been changed at any time.

### III.

### WYSTRACH'S TESTIMONY

Martinez argues that Wystrach was a co-conspirator and that her testimony linking

him to the murder was inadmissible hearsay, unless it fits within the co-conspirator hearsay exception of Rule 801. Martinez maintains that the state failed to present sufficient and independent evidence of a conspiracy to make her testimony admissible under Rule 801.

Under the co-conspirator exception to the hearsay rule, statements offered against a party and made by a co-conspirator during the course and in furtherance of the conspiracy are not hearsay. In order to fit testimony into the co-conspirator exception, it is not necessary that a formal charge of conspiracy be made, but the prosecution must present "some evidence" of the conspiracy before a court can properly admit evidence of statements made in pursuance of the conspiracy. *State v. Caudill,* 109 Idaho 222, 226, 706 P.2d 456, 460 (1985). We will not disturb a trial court's decision to admit statements so long as there is "sufficient evidence to permit the trial court reasonably to infer that there existed a conspiracy." *State v. Hoffman,* 123 Idaho 638, 642, 851 P.2d 934, 938 (1993) (*citing State v. Brooks,* 103 Idaho 892, 901, 655 P.2d 99, 108 (Ct.App. 1982)).

In denying Martinez' motion to exclude this testimony, the trial court found there was sufficient evidence of a conspiracy to fit Wystrach's testimony within the co-conspirator exception. We find that the evidence was sufficient to make that finding. Looking at the record as a whole, there is sufficient independent evidence to permit the trial court reasonably to infer that a conspiracy existed. Wystrach's non-hearsay testimony clearly established the conspiracy. Further, George Florence testified to seeing Martinez and Jones parked near the victim's house a few days before the murder. Spalding testified to Martinez having a "job" in

---

nications after June 29, 1979, of which there were none.

2. Idaho Rule of Evidence 601 provides that every person is competent to be a witness with certain exceptions not applicable here. I.C. § 19–3002 provides that "[n]either husband nor wife are competent witnesses for or against each other in a criminal action or proceeding to which one or

both are parties, except: [ ] [w]ith the consent of both...."

3. Rule 1102 provides that "[s]tatutory provisions and rules governing the admissibility of evidence, to the extent they are evidentiary, and to the extent that they are in conflict with applicable rules [of evidence], are of no force or effect."

Boise and to Martinez and Jones taking evening trips. Since there was independent evidence of the conspiracy, Wystrach's testimony as to statements of any of the co-conspirators made during and in furtherance of the conspiracy were admissible.[4] *See State v. Jones*, 125 Idaho 477, 873 P.2d 122 (where this Court found that Wystrach's testimony at Jones' trial, which was substantially the same as that in this trial, "clearly establish[ed] the conspiracy.")

## IV.

### PREACCUSATORY DELAY

Martinez claims that he has satisfied the test enunciated by this Court in *State v. Murphy*, 99 Idaho 511, 584 P.2d 1236 (1978), to show that preaccusatory delay denied him due process. Under *Murphy*, the defendant must show substantial prejudice caused by the delay and that the delay was an intentional device used by the prosecution to gain a tactical advantage over the accused.

Defendant maintains that he showed substantial prejudice because at least two defense witnesses had died during the decade-long delay. These witnesses would have testified to another source for the money allegedly received by Martinez for his role in the murder, which testimony would have been vital in refuting the state's case against him.

Martinez further claims that he showed that the delay was intentional because the state could have tried the case in 1981 but chose not to. The prosecutor admitted that all the state's witnesses were known and available in 1981.

We are not convinced. Although we do not doubt that the delay may have had an impact on witness availability under the first prong of *Murphy*, we need not consider that possibility because we find that Martinez failed to satisfy the second prong of *Murphy*. Martinez has failed to show affirmatively that the delay was intentional. He merely alleges that, because the prosecutor admitted that all the state's witnesses were known and available in 1981 and it could have tried the case in 1981 but chose not to, the delay was an intentional tactic to gain an advantage over the accused. We reject this conclusory allegation. We will not infer the motives of the prosecution from what is little more than the bare recital of the events between the defendants' arrest and the indictment. *Murphy*, 99 Idaho at 515, 584 P.2d at 1240.

## V.

### FAILURE TO DESIGNATE SPALDING AS AN ACCOMPLICE

The trial court refused both at trial and upon Martinez' motion for a new trial to designate Spalding as an accomplice. Martinez argues that the district court erred in failing to designate Spalding as an accomplice or, at least, in failing to submit her status as such to the jury. According to Martinez, the prosecution relied on Spalding's testimony as a nonaccomplice for the purpose of corroborating Wystrach's testimony. It is only the testimony of Wystrach and Spalding which link the defendant to the crime; there is no other independent evidence to establish such a link. According to Martinez, since Spalding was an accomplice, her testimony could not be used to corroborate Wystrach's testimony.

As to the trial court's alleged error in its failure to designate Spalding as an accomplice at trial, Martinez relies on the fact that

---

4. Martinez does not direct the Court to specific hearsay testimony of Wystrach which allegedly should be excluded. Rather, he maintains that her testimony was hearsay in the form of statements made by the co-defendant Jones and the defendant, Donna Cordell, which were made to the witness Wystrach outside the presence of Defendant Martinez. Our independent review of the record of Wystrach's testimony reveals the following hearsay testimony: that Jones told her about Cordell's initial request regarding the murder and about how much money would be paid for the murder. She also testified that when she and Jones went to check out the victim's house, Jones said to her that he "got a clear shot in" with the binoculars. She testified that Cordell told her and Jones about the victim's comings and goings and business trips and why she wanted him killed. She testified that Martinez threatened her if she did not keep quiet about the murder. The trial court excluded other testimony of Wystrach regarding statements of Jones made to her after the murder, specifically regarding details of the murder, on the ground that these statements were not in furtherance of the conspiracy.

she was indicted by the same grand jury which indicted him.[5] As to the trial court's alleged error in failing to grant a new trial on this issue, Martinez relies on events which occurred after trial which, according to him, reveal the trial court's error. This evidence was presented to the trial court in Martinez' motion for a new trial on this issue. Specifically, Martinez points to evidence that at defendant Jones' trial, which took place after Martinez' trial, Wystrach testified that Spalding drove the car for Martinez and Jones the night of the murder. At Martinez' trial, Wystrach testified that Spalding did not drive the car. In addition, Martinez argues that in the course of discovery involving other defendants indicted in the murder, certain evidence of Spalding's role as an accomplice was discovered, which evidence was not revealed to the defendant during discovery preceding his trial. This evidence includes statements by Spalding's brother and his roommate to authorities made in 1979 and 1980 that Spalding was an accomplice.

In denying Martinez' motion for a new trial, the trial court rejected this argument because it found that even if Wystrach had testified at another trial that Spalding drove the car the night of the murder, "it does nothing more than create a factual dispute" because Wystrach testified to the contrary at Martinez' trial. The trial court also noted that if faced with a conflict between Wystrach's testimony and that of Spalding, it would find Spalding's testimony more credible.

■ We find no error. First, the district court did not err in failing to designate Spalding an accomplice at trial. The only evidence cited by Martinez in support of this

argument is that Spalding was indicted by the grand jury as was Martinez. This is not enough to make her an accomplice. There was no evidence presented at Martinez' trial that Spalding was involved in the murder in any way. Thus, the trial court's initial refusal to designate Spalding as an accomplice is not grounds for reversal. *See generally State v. Bruno,* 119 Idaho 199, 203, 804 P.2d 928, 932 (Ct.App.1990) (if there is no factual dispute, the trial court need not submit the accomplice question to the jury).

■ Second, we agree with the trial court's reasoning in its denial of Martinez' motion for a new trial that this "newly discovered" evidence, assuming *arguendo* that it is such, merely goes to the impeachment of Spalding. Evidence which is merely cumulative or impeaching is not a sufficient basis for the grant of a new trial. *State v. Drapeau,* 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

## VI.

### NEWLY DISCOVERED EVIDENCE REGARDING THE CREDIBILITY OF WYSTRACH

■ Similar to his argument regarding newly discovered evidence about Spalding, Martinez argues that following his trial, the defense discovered evidence directly relevant to the credibility of the key prosecution witness, Wystrach. The trial court denied his motion for new trial based on this evidence under *State v. Drapeau,* 97 Idaho 685, 551 P.2d 972 (1976), and held that this evidence was cumulative of other evidence used by the defense to impeach Wystrach and was not sufficient to allow the court to determine that it would "probably produce an acquittal."[6]

---

**5.** Martinez' argument is based on I.C. § 19–2117, which addresses the testimony of an accomplice and the corroboration requirement. Under I.C. § 19–2117,

> [a] conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.

It is Martinez' argument that, if Spalding were designated an accomplice, as he argues she

should have been, her testimony would have had to have been corroborated, and that there was no such corroborative evidence, and that, further, she could not have corroborated Wystrach's testimony. According to Martinez, without the testimony of Spalding or Wystrach, a conviction could not have been based solely on the testimony of George Florence.

**6.** Part of this evidence was included in a 98–page statement given by Wystrach to an Ada County detective, Rita Rowe, (the "Rowe statement"), prior to Jones' trial. According to Martinez, the Rowe statement showed inconsistencies between

We find no error. We have reviewed this evidence and agree with the trial court that it involved minor testimonial inconsistencies and involved occurrences that took place after the trial and which would not have enabled the defense to change its approach toward a witness anything other than reputable. *State v. Drapeau,* 97 Idaho 685, 691, 551 P.2d 972, 978 (1976). The newly discovered evidence raises questions regarding Wystrach's alleged drug and alcohol abuse, or lack thereof, and her motives for testifying against defendant, along with minor inconsistencies regarding the alleged murder plot. Wystrach was thoroughly cross-examined at trial and her character, morals and ethics, or lack thereof, were exhaustively challenged during that cross-examination. The fact that she could be further cross-examined regarding issues of motive, drug and alcohol abuse and details of the crime would be merely cumulative impeachment evidence.

## VII.

### CUMULATIVE ERRORS

Martinez argues that each of the errors committed by the trial court requires reversal. Alternatively, he argues that even if any individual error does not in itself require reversal, the cumulative effect of the errors deprived Martinez of a fair trial and warrants a reversal.

 Under the cumulative errors doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983); *People v. Bell,* 152 Ill.App.3d 1007, 106 Ill.Dec. 59, 505 N.E.2d 365 (1987).

Wystrach's testimony in Jones' trial and her testimony in Martinez' trial. For example, in the Rowe statement, Wystrach stated that she participated in the pick-up of the final murder payment and that at least three other people participated in the planning of the murder; at Martinez' trial Wystrach testified that she was not involved in the pick-up and that only Jones, Martinez and she planned the murder. The Rowe statement also contained assertions that Wystrach was on

Based on the foregoing analysis, we find no merit in Martinez' cumulative error argument and wholly affirm the trial court.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ., concur.

surveillance several times with Jones and Spalding which was inconsistent with her trial testimony and Spalding's testimony. Additionally, Norman O'Driscoll, Wystrach's boyfriend during the time of the trial, later provided statements to the defense showing that Wystrach perjured herself in Martinez' trial on issues involving drug and alcohol use and her having been raped by Martinez and Jones.