BURDICK, Chief Justice,
dissenting.
I dissent because I am unable to agree with the Majority’s conclusion that the prosecutors violated Brady and Napue by not disclosing every minute detail about their promises to help Thomas get out of prison and placed on probation. The Majority concludes that the prosecutors failed to disclose the full details about their agreement with Thomas in exchange for his testimony and this failure “undermines our confidence in the outcome of the trial.” However, I believe the details of the agreement were adequately disclosed, and that any additional details about what was agreed to by the prosecutors and Thomas was merely cumulative impeachment evidence that would not have affected the judgment of the jury.
At a post-trial evidentiary hearing one of the prosecutors was questioned about his pre-trial conversations regarding what Thomas would receive in exchange for testifying in Lankford’s case:
Q: [W]hat was your understanding of what Lane Thomas would get in exchange—
A: Well, first of all, Lane never asked me for anything.
Q: Did—let me follow up on that. Did you ever negotiate directly with Lane?
A: I—believe—you know, again, let me say, he never asked for anything. I think at one point when I was talking to him— and I don’t know—I don’t know for sure when that was. It would have been before trial.
And I—I told him—-and, again, he didn’t ask for this. ,But I said, if you’re going to *508 put your life on the line and testify against Mark, I would be willing to talk to the Latah County Prosecutor. Because at that time, I believe—when I talked to him at that point, he was doing a rider at Cottonwood, and I was fearful for his safety.
And what I told him in that conversation was, you know, I will try and—try and get you out of the prison system. He was on a—not—you know, he wasn’t in Boise doing hard time; he was doing a rider. And, basically, I told him I would help him, if I could. And I—I couldn’t promise him any results, but I said I would try to get him put on probation.
It is clear from the prosecutor’s testimony that although Thomas did not ask for anything, in essence, the prosecutor offered to help Thomas get out prison and placed on probation. This underlying assertion, that the prosecutor would attempt to help Thomas get out on probation, is essentially what was disclosed at trial.
On direct examination of Thomas the following exchange took place between the prosecutor and Thomas:
Q: The Prosecutor’s Office was going to write a letter of cooperation for your testimony today?
A: Yes.
Q: And that they would send that to the North Idaho Correctional Institution in Cottonwood?
A: Yes.
Q: And that that would say that you cooperated with the investigation of the Mark Lankford case and testified truthfully?
A: Yes.
Then on cross-examination defense counsel asked about Thomas’ current sentence and what Thomas hoped would happen after testifying in the Lankford case:
Q: And you want to better yourself on this rider or retained jurisdiction program, correct, so you can be placed on probation when you come back for a rider review hearing, correct?
A: Yes, sir.
Q: And it’s your hope to be placed on probation at the end of this right?
A: Yes, sir.
From these two exchanges it is clear that the prosecution agreed to support Thomas by writing a letter and that Thomas believed his cooperation in Lankford’s case would help him secure a release from prison and placement on probation. Accordingly, the jury was perfectly aware that the prosecutors were going to be involved in securing probation for Thomas. The Majority makes much of the fact that during the trial Thomas only testified to a letter being written on Thomas’ behalf and not to the prosecutor’s pre-trial statements that the prosecutor would try to help Thomas get out on probation by personally talking to the Latah County prosecutor. Evidence of the latter, the Majority concludes, would so further impeach Thomas to the jury that the Majority’s confidence in the verdict is undermined. However, Thomas was already impeached by evidence of the letter of cooperation, which the jury had been informed was intended to help Thomas get placed on probation, and thus, the principal component of the agreement between Thomas and the prosecutors was readily evident to the jury: By testifying in Lankford’s case, Thomas hoped to get out of prison and placed on probation, and the prosecutors had agreed to assist Thomas in his desire to do so. Any additional evidence of the prosecutors’ agreement to help Thomas get out on probation was merely cumulative to the jury’s awareness that the prosecutors had agreed to support Thomas in his desire to be placed on probation. In my view, such cumulative impeachment evidence, without more, is insufficient to undermine confidence in the verdict to the extent that a new trial is warranted. See, e.g., State v. Martinez, 125 Idaho 445, 452, 872 P.2d 708, 715 (1994) (“Evidence which is merely cumulative or impeaching is not a sufficient basis for the grant of a new trial.”); U.S. v. Marashi, 913 F.2d 724, 732 (1990) (“[C]umulative impeachment evidence [is] not Brady material.”). Therefore, because the Majority’s sole reason for granting a new trial was based on what I view to be merely cumulative impeachment evidence I would affirm the district court.
Justice BRODY concurs.