# IN THE SUPREME COURT OF IOWA

No. 16–1650

Filed May 11, 2018

**DAVID M. POWERS,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Applicant for postconviction relief filed an interlocutory appeal of the district court ruling quashing his subpoena for discovery of police investigative reports and the district court ruling excluding all evidence and testimony related to the alleged false claims of his complaining witness contained in the investigative reports. **REVERSED AND REMANDED.**

Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Brian Williams, County Attorney, and Kimberly Griffith and Elizabeth O'Donnell, Assistant County Attorneys, for appellee.

Lance W. Lange and Mitch G. Nass of Faegre Baker Daniels, LLLP, Des Moines, for amici curiae Innocence Network, Innocence Project of Iowa, and Midwest Innocence Project.

**ZAGER, Justice.**

In 2011, a jury convicted David Powers on two counts of sexual abuse based on allegations made by his granddaughter from several years earlier. Throughout the trial, Powers denied all the claims made against him. The jury heard testimony from the child victim and other various family members, including the child's parents and brother, that the child was known to lie. Powers appealed his convictions arguing, among other claims, that there was insufficient evidence to convict him. The court of appeals affirmed his convictions.

Powers subsequently filed this application for postconviction relief. As part of his application, Powers alleges that between the time of his convictions and his sentencing, the Waterloo Police Department was investigating claims of sexual abuse that his victim was making against local gang members. While the final investigative report had yet to be completed prior to the time of sentencing, Powers alleges that the ongoing investigation was concealed from his trial counsel. Powers maintains that prior to sentencing, the police had determined the claims made against the gang members were false. As part of his discovery in these postconviction-relief proceedings, Powers attempted to subpoena the Waterloo police chief to produce the investigative reports related to those claims. The district court conducted two hearings related to the requested production of the investigative reports. After the second hearing, and after the district court had reviewed all of the documents and reports in camera, the district court granted the motion to quash filed by the City of Waterloo and denied disclosure of the investigative reports to Powers. The district court also ruled that all evidence and testimony related to the alleged false claims of the victim would be excluded from the postconviction-relief trial. Powers sought interlocutory appeal from these rulings, which we granted

and retained. For the reasons set forth below, we reverse the rulings of the district court and remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

In February 2011, David Powers was tried before a jury for one count of sexual abuse in the second degree[1] and one count of sexual abuse in the third degree.[2] The charges were based on allegations made by his granddaughter, K.P. K.P. claimed that one instance of sexual abuse occurred while she was under twelve years of age, and the other instance of sexual abuse occurred when she was thirteen years old. Throughout the proceedings, Powers maintained his innocence and argued to the jury that his granddaughter had made up the allegations against him. K.P. and several witnesses testified at trial. K.P. admitted that she had told lies in the past, such as lying to her parents about her whereabouts or who she was with, so she could "do things that they don't let [her] do." Other witnesses, including a close friend of K.P., her mother, father, and brother, all testified that K.P. was known to lie or be untruthful. Her younger

---

[1]"A person commits sexual abuse in the second degree when the person commits sexual abuse under any of the following circumstances: . . . 2. The other person is under the age of twelve." Iowa Code § 709.3(2) (2009). "Sexual abuse in the second degree is a class 'B' felony." *Id.* § 709.3.

[2]Section 709.4(2)(*b*) provides,

> A person commits sexual abuse in the third degree when the person performs a sex act under any of the following circumstances:
>
> . . . .
>
> 2. The act is between persons who are not at the time cohabiting as husband and wife and if any of the following are true: . . .
>
> . . . .
>
> (*b*.) The other person is twelve or thirteen years of age.

Iowa Code 709.4(2)(*b*). "Sexual abuse in the third degree is a class "C" felony. *Id.* § 709.4.

brother testified that K.P. had asked him to lie to the abuse investigator by claiming that Powers had also touched him, but the brother declined to do so. Additionally, testimony was obtained from Powers's physician that it was "highly unlikely" Powers could achieve or sustain an erection because of his health issues despite testimony from K.P. to the contrary. The jury convicted Powers on both counts of sexual abuse on February 5.

Shortly after the jury issued its verdicts, but before Powers was sentenced, K.P. ran away from home. She was located a few days later and taken to a youth shelter. K.P. subsequently reported to Waterloo police that she had been sexually assaulted by area gang members when she was at their residence while she was on runaway status. Officers Naumann and Chopard of the Waterloo Police Department investigated the case. Their investigation included interviews with K.P., her father, her boyfriend at the time, and other minors who were with K.P. during the night of the alleged sexual assault.

By the time of the last interview with K.P. in mid-March, it was apparent that police were receiving inconsistent stories from the witnesses about the nature of the alleged sexual assault. The police met a final time with K.P. and her father on March 14 after conducting the numerous interviews. K.P.'s father, Phil Powers, claims the detective told him and K.P. "that the stories weren't matching up." Phil contends the detective also said there was nothing the police could do about K.P.'s rape allegation because "they felt there were too many loopholes." Phil also alleges the detective told him "that they believed it was a false report." Officer Chopard questioned K.P. about some of the inconsistencies in her story. During this meeting, after being confronted about these inconsistencies, K.P. stated she no longer wanted to pursue the charges "since no one

believed her." The final report regarding this incident was dated May 2, closing the investigation.

While this investigation was on-going, after his convictions but prior to sentencing, Powers filed a motion for new trial based on the insufficiency of the evidence to support the convictions. The motion for new trial was denied, and Powers was sentenced on April 12. Powers appealed his convictions, which were affirmed by the court of appeals.

In December 2013, Powers filed an application for postconviction relief. Powers subsequently amended his application in October 2014 to include claims of newly discovered evidence, concealment of exculpatory evidence, and ineffective assistance of trial counsel. As the basis of his claims, Powers argued the concealment of the investigation and resulting reports from his trial attorney, specifically regarding K.P.'s claims of sexual assault against the gang members, violated his due process rights under the State and Federal Constitutions. Alternatively, Powers maintained his trial counsel was ineffective in failing to investigate information regarding the reports and to litigate them if counsel had knowledge about the other false accusations.

To support his argument that K.P. had made false accusations against him, Powers subpoenaed K.P. to testify at his postconviction-relief trial scheduled for June 22, 2016. On June 13, a public defender filed a motion to quash the subpoena on behalf of K.P., explaining that K.P. had a family vacation on the date of the scheduled appearance. Powers agreed to reschedule his postconviction-relief trial. The district court continued the trial and ordered a trial setting conference. The district court also scheduled a one-hour hearing for July 25 regarding K.P.'s motion to quash.

Prior to the July 25 hearing, Powers filed a motion for ruling on admissibility of evidence and a response to the motion to quash. In this motion, Powers explained that K.P.'s motion to quash only requested relief from attending the June 22 hearing due to vacation plans, which Powers did not resist. Further, Powers noted the State had failed to file any motion arguing K.P.'s testimony would be barred by Iowa Rule of Evidence 5.412, thereby rendering her motion to quash moot. Additionally, Powers detailed what he knew about the events surrounding the allegations K.P. made against the gang members. Powers reiterated his argument that the police had determined the allegations were false.

In response, K.P. filed an amended motion to quash which stated, "[T]he testimony [of the allegations against the gang members] is irrelevant and should be excluded as a subsequent act unrelated to the events of the David Powers criminal trial." Powers countered with a resistance to the amended motion exclaiming, "Again, there is currently NO subpoena pending for the Court to Quash. The witness, K.P., is NOT subpoenaed to provide any testimony at this time because there is no trial scheduled." That same day, Powers filed a subpoena duces tecum, directing the Waterloo police chief to produce the investigative reports on K.P.'s claims against the gang members. The Waterloo City Attorney moved to quash the subpoena duces tecum asserting the investigative reports were "wholly unrelated to the underlying sexual abuse case." The city attorney also joined in K.P.'s motion to quash. In his resistance to these motions to quash, Powers argued that neither K.P.'s public defender nor the city was a party to his postconviction-relief action, and neither had standing to object to the relevance of the investigative reports or his motion for ruling on the admissibility of evidence.

On July 25, the district court held a hearing on the pending motions. The district court heard testimony from Phil Powers who testified about his interactions with the Waterloo police regarding the allegations K.P. made against the gang members. Powers's attorney asked Phil, "Did they tell you, in fact, that they believed it was a false report?" Phil responded, "He did."

The district court judge also questioned Phil after the attorneys finished questioning him. The judge questioned Phil about the physical description of the officer who had told Phil that he believed K.P. had made a false report. Phil told the judge that the officer was a 6'1" middle-aged male with dark hair who weighed "probably 200 or less." The attorney for K.P. volunteered the identity of the investigating officer to the judge, informing him that it was Officer Chopard who talked to K.P. and her father about the investigation. At the conclusion of the hearing, the court requested the investigative reports. The judge also requested a photo of Officer Chopard, as well as "specific information about Chopard, because [his] recollection of his appearance, from having testified any number of occasions, is different than Mr. Powers's recollection of the person that he talked to."

The city attorney provided the district court with the investigative reports, which it was able to review in camera. On August 31, the district court held further proceedings regarding the motion in which it was able to hear the testimony of Officer Chopard. Chopard denied telling K.P. or her father that he believed K.P. filed a false report. Chopard disputed telling K.P. or her father that he did not believe the claims or that they were false. Chopard testified, "I never would tell anybody I didn't believe them. I would tell them why there are factors in the case where I couldn't pursue charges." Chopard explained that he did have doubts about the

truthfulness of the claims K.P. made against the gang members due to the inconsistencies in her story compared to those of her friends. However, he also agreed that "there are a multitude of reasons" why K.P. would decline to press charges, and he discussed the concern K.P. and her father had about retribution from the gang members if she pursued the charges.

Finally, Chopard explained, Phil and K.P. told him that they did not want to pursue charges against the gang members. The district court also read a portion of the investigative report that Chopard wrote, which stated,

> K.P. told me that since nobody believed her she did not want to press charges. I explained to KP that if something happened to her that she needed to tell the truth about what happened and not change her story. I explained to her that her story at this point did not match what both of her friends had told me about the night. K.P. told me again she did not want anything done and wanted to leave. While outside of the interview room Phil also explained to me that he did not think his daughter was being truthful about the incident. Phil also advised me he did not want anything further done with this case.

At no point did K.P. recant her sexual assault allegations against the gang members.

At the conclusion of this hearing, the district court issued its oral rulings on the pending motions. The district court found that Phil Powers was not a credible witness. After discussing the inaccuracies in Phil's description of Chopard, the district court stated, "And that leads me to the point of view that Mr. Powers intentionally testified falsely." The district court explained that Phil "has identified with his father and has chosen to do whatever and say whatever is necessary to get his father out of the predicament that his father is in." Additionally, the district court found "that there is absolutely no credible reason to believe that [K.P.] made a false accusation." The district court granted the city's motion to quash,

ruling the police did not have to provide Powers with the investigative reports.

In reaching this decision, the district court explained,

> Had all of this evidence been known to the criminal defense attorney between the trial and the sentencing of Mr. Powers, the applicant, it would have made absolutely no difference because it has no more relevance to the case involving Mr. Powers, the applicant, than any other sexual assault other than the sexual assault involved the same victim. One has nothing to do with the other.

The district court also granted K.P.'s motion to quash "in terms of any testimony relating to the events that happened to [K.P.] in the gang-related situation." Nevertheless, the district court found K.P. would have to testify about her claims against Powers if she was called to testify in his postconviction-relief trial. Powers requested a written ruling on the motions, and the district court agreed to issue a written ruling. However, the district court never filed a written ruling. Powers filed a timely interlocutory appeal of these rulings, which we granted and retained.

## II. Standard of Review.

Our standard of review for constitutional challenges to discovery rulings is de novo. *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012). We review nonconstitutional challenges to a district court ruling on a discovery matter for an abuse of discretion. *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 43 (Iowa 2004). In doing so, "we afford the district court wide latitude." *Id.* (quoting *Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d 801, 804 (Iowa 2000)). "A reversal of a discovery ruling is warranted when the grounds underlying a district court order are clearly unreasonable or untenable." *Id.* (quoting *Exotica Botanicals, Inc.*, 612 N.W.2d at 804). A district court decision is "unreasonable or untenable" when it "is not supported by substantial

evidence or when it is based on an erroneous application of the law." *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014) (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)).  We also review district court rulings on evidentiary issues for an abuse of discretion.  *State v. Olutunde*, 878 N.W.2d 264, 266 (Iowa 2016).

### III.  Analysis.

Powers raises three issues on interlocutory appeal.  First, Powers contends the district court abused its discretion by quashing his subpoena duces tecum for the investigative reports documenting the police investigation into the allegations of sexual abuse that K.P. made against the gang members.  Second, Powers argues the district court also abused its discretion by overruling his motion for ruling on the admissibility of evidence.  Third, Powers argues the district court decision overruling his motion for ruling on the admissibility of the evidence violated his procedural due process rights, as it "denied [him] the opportunity to conduct discovery to develop the evidence, failed to afford [him] a fundamentally fair opportunity to be heard, failed to proceed in an unbiased manner, and reached [its] conclusions on unreasonable and untenable grounds."  We address these issues as necessary.

Rule 1.503 of the Iowa Rules of Civil Procedure allows parties to

> obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Iowa R. Civ. P. 1.503(1).  The party seeking the information "need only advance some good-faith factual basis demonstrating how the [information

is] reasonably calculated to lead to admissible evidence germane to an element or factor of the claim or defense." *Fagen v. Grand View Univ.*, 861 N.W.2d 825, 835 (Iowa 2015). Similarly, to avoid compliance with a valid subpoena, the party objecting to the subpoena must establish a countervailing interest, such as privilege, confidentiality, undue burden, or undue expenses. *See* Iowa R. Civ. P. 1.1701(4)(*a*), (*b*)(2), and (*d*).

In this case, the city objected to Powers's subpoena duces tecum, reasoning that the reports were "irrelevant" to his postconviction relief proceedings because they were "wholly unrelated to the underlying sexual abuse case." Similarly, the State argues on appeal that the investigative reports are irrelevant since the claims K.P. made in the reports are not false. In contrast, Powers contends the reports are within the scope of discovery because they "would be reasonably calculated to lead to discovery of admissible evidence to show K.P. made a false complaint of sexual abuse against other persons." Moreover, Powers asserts the reports refer to witnesses who have crucial information about the reputation K.P. has for being dishonest and may also have information about her accusations against him.

Powers also points out in his appellate brief that the investigative reports fall within the terms of the Iowa Open Records Act. Since the investigation into the events that transpired between K.P. and the gang members is no longer ongoing, and this is not an unusual circumstance "where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of an individual," the investigative reports at issue are not considered confidential records. Iowa Code § 22.7(5) (2016). The city never argued before the district court that the investigative reports were confidential under section 22.7(5) or fell within an exception to the state open records laws. Nor did the State on

appeal. Nevertheless, Powers did not seek access to the investigative reports through this legal avenue.

In reaching our conclusion, it is important to emphasize that we primarily need to decide whether the investigative reports are within the scope of discovery, not whether they are admissible in the postconviction-relief proceedings. On appeal, Powers is not arguing whether the documents are admissible in his postconviction-relief proceedings. Indeed, the district court may rule that the reports are inadmissible. But that is not before us at this time since "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Iowa R. Civ. P. 1.503(1). Rather, we must determine whether the reports are relevant and whether Powers advances "some good-faith factual basis demonstrating how the [information is] reasonably calculated to lead to admissible evidence germane to an element or factor of the claim or defense." *Fagen*, 861 N.W.2d at 835. Our review of the evidence before the district court shows that Powers has met this low threshold.

"In a case in which the evidence against the defendant is not overwhelming, such evidence [of false claims] is imperative to an effective defense." *Millam v. State*, 745 N.W.2d 719, 723 (Iowa 2008). For example, in *Millam*, the case against the defendant relied almost exclusively on the complaining witness's testimony, and there was no physical evidence or any witnesses to the sexual abuse. We found the witness's "credibility was pivotal to the State's case," and "[a]ny evidence undermining that credibility could only work in [the defendant's] favor, particularly evidence that [the complaining witness] had made, and later recanted, similar claims of sexual abuse." *Id.*

The *Millam* case is factually similar to the case here except for the timing of the alleged false accusations. The State had no physical evidence or witnesses to the alleged sexual abuse committed by Powers. The State relied almost exclusively on testimony from K.P. and other witnesses that K.P. had told about the sexual abuse to make the case against Powers. Though the jury did hear evidence from K.P.'s family and a friend that she had a reputation for lying, evidence that K.P. had also made false allegations of sexual abuse against others would likely further undermine her credibility in Powers's favor. In a case like this, where the credibility of the complaining witness is dispositive, "such evidence of [false claims] is imperative to an effective defense." *Id.*

The State claims that evidence of another lie would not have made a difference to Powers since the jury already heard evidence that K.P. had a reputation for dishonesty, yet convicted Powers anyway. That very well could be true. However, this argument is not dispositive as to whether Powers is entitled to the investigative reports. Powers is not necessarily arguing that the evidence of the allegations against the gang members would have affected the jury in his criminal trial. Instead, a significant argument could be made that evidence showing K.P. made false allegations of sexual abuse against others, at or around the time that the motion for new trial was pending, may have had an impact on the sentencing judge when he or she was considering and deciding the motion for new trial.

In assessing a motion for new trial, the judge examines the weight of the evidence offered in the criminal trial, which includes a weighing of the credibility of the complaining witness. *See* Iowa R. Crim. P. 2.24(2)(*b*); *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998). In claims involving evidence discovered since the verdict, this necessarily includes evidence discovered between the verdict and sentencing that speaks to the

credibility of the complaining witness. Iowa R. Crim. P. 2.24(2)(*b*)(8).[3] Thus, the investigative reports are clearly relevant if they tend to show K.P. made false claims of sexual abuse against others. It was an abuse of discretion for the district court to rule that the investigative reports are not discoverable by Powers.

Despite the deference we give the district court in its discovery rulings, we cannot find that the district court decision to deny Powers access to the investigative reports was supported by substantial evidence. Likewise, the district court finding that Powers could not "make a colorable claim there was a false report because nothing except Phil Powers[,] and Phil lacks any knowledge, lacks any credibility," ignores the fact that Chopard's testimony tends to corroborate Phil.

As Chopard wrote in one of the reports,

> I explained to K.P. that if something happened to her that she needed to tell the truth. I explained to her that her story at this point did not match what both her friends had told me about the night.

Further, Chopard testified, "I wouldn't tell [Phil] directly that I didn't believe [K.P.]. I would tell him why there's different aspects of the case that make it hard for me to pursue charges at that time." When asked if he had "an opinion as to whether or not [he] believed K.P. on this complaint [against gang members]," Chopard answered, "It was hard for me to believe because of the evidence and the amount of time and what the other witnesses [were] saying." Moreover, Chopard acknowledged that it may have come across to Phil that Chopard did not believe K.P., explaining, "[I]t

---

[3]Under the Iowa Rules of Criminal Procedure, a "court may grant a new trial . . . [w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." Iowa R. Crim. P. 2.24(2)(*b*)(8).

may have come across because of all of the concerns that I had with the lack of corroboration."

It is evident from the investigative reports, and the testimony of Chopard, that there were serious concerns about K.P.'s claim of a sexual assault based on the statements provided by other witnesses who were in the residence when the alleged sexual assaults occurred. Based on the evidence before the district court, but not available to Powers, the investigative reports could potentially contain false claims relevant to his own claim or defense. Likewise, Powers advanced a "good-faith factual basis demonstrating how the [information is] reasonably calculated to lead to admissible evidence germane to an element or factor of the claim or defense." *Fagen*, 861 N.W.2d at 835. Specifically, he noted that the witnesses discussed in the investigative reports have "vital information about K.P.'s untruthfulness," and they also "may have heard K.P. make statements about her accusations against her grandfather." Therefore, the district court abused its discretion in refusing to allow discovery of the investigative reports in this case. On remand, the district court will need to determine the parameters of the disclosure of the investigative reports to Powers, whether through a protective order or under seal.

Similarly, the district court abused its discretion in ruling on the admissibility of evidence regarding the investigative reports. Such a ruling was premature. Once the district court determines how the investigative reports will be provided to Powers, each party must then be allowed the opportunity to develop the record and argue its position as to the admissibility of the investigative reports and potential witness testimony regarding the investigative reports in the postconviction-relief proceedings.

By ordering the disclosure of these investigative reports under these unique circumstances, we are not retreating from our position that defense

counsel is not free to proceed on a "fishing expedition." *State v. Thompson*, 836 N.W.2d 470, 487 (Iowa 2013). Rather, we hold that Powers has demonstrated the relevance of the investigative reports, and he has met the threshold requirement needed to obtain the reports by showing "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Iowa R. Civ. P. 1.503(1). Consequently, Powers should be able to develop the record in these proceedings. Given our ruling ordering the disclosure of the investigative reports to Powers, we need not address the constitutional challenge. *See Thompson*, 836 N.W.2d at 484 (noting "our mandate" to avoid considering constitutional issues on appeal when other issues presented are decisive).

## IV. Conclusion.

For the aforementioned reasons, we reverse the ruling of the district court denying discovery of the investigative reports and order the reports disclosed to Powers under appropriate conditions determined by the district court. We also reverse the ruling of the district court regarding the admissibility and use of the investigative files in the postconviction-relief proceedings. We remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Mansfield and Waterman, JJ., who dissent, and Hecht, J., who takes no part.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. K.P. allegedly made a false claim she was sexually assaulted *after the trial.* The majority assumes this posttrial event could constitute newly discovered material evidence under Iowa Rule of Criminal Procedure 2.24(2)(*b*)(8) and Iowa Code section 822.2(1)(*d*) (2016).[4] Thus, the majority moves on to whether the defendant was entitled to discovery. However, because the event occurred after the defendant's trial and would at most have been used to impeach K.P.'s testimony at trial, it is not newly discovered material evidence. Therefore, in my view, the entire discovery dispute may be sidestepped. As the State puts it, "[t]his unrelated, subsequent report of sexual abuse is not newly discovered evidence in Powers's case."

Our courts have made this point in the past. "Since TeKippe's conviction occurred after Aguilera's trial, it cannot be considered newly discovered evidence." *Aguilera v. State*, 807 N.W.2d 249, 251 n.3 (Iowa 2011). " '[N]ewly discovered evidence' sufficient to support a new trial must be evidence that existed at the time of trial." *Grissom v. State*, 572 N.W.2d 183, 184 (Iowa Ct. App. 1997). Witness recantations and

---

[4]According to rule 2.24(2)(*b*)(8), the trial court "may grant a new trial . . . [w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." Iowa R. Crim. P. 2.24(2)(*b*)(8).

According to Iowa Code section 822.2,

Any person who has been convicted of, or sentenced for, a public offense and who claims any of the following may institute, without paying a filing fee, a proceeding under this chapter to secure relief:

. . . .

*d.* There exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.

Iowa Code § 822.2(1)(*d*).

reanalysis of physical evidence can be distinguished. *See, e.g., More v. State,* 880 N.W.2d 487, 508, 510 (Iowa 2016); *Harrington v. State*, 659 N.W.2d 509, 521 (Iowa 2003). In those instances, the events occurred *before* trial, even though new evidence may have surfaced after the trial about those events.

Other courts agree with us. Criminal trials have an endpoint, and events that occur after trial—as opposed to new evidence about pretrial events—aren't a basis for reopening the proceedings.

For example, a New Jersey appellate court recently rejected a defendant's claim of newly discovered material evidence on this ground. *State v. Brunson,* No. 88–06–1035, 2015 WL 10913392, at *8 (N.J. Super. Ct. App. Div. May 26, 2016) (per curiam). The defendant had been convicted of murder in 1990. *Id.* at *1. He later claimed he was entitled to a new trial based on newly discovered evidence of misconduct in 1991 and the late 2000s by the judge presiding over his trial and a 1991 conviction of the defendant's arresting officer for raping a woman while on duty. *Id.* at *2. The court ruled otherwise because the "misconduct occurred after the defendant's conviction" and was ultimately "irrelevant to his conviction." *Id.* at *8.

Likewise, in *State v. Everett,* the Louisiana Court of Appeal affirmed the denial of the defendant's motion for a new trial on the basis of newly discovered evidence. 156 So. 3d 705, 711, 713 (La. Ct. App. 2014). The defendant had claimed that the subsequent convictions of his arresting officers for malfeasance in office warranted a new trial. *Id.* at 711. However, the court determined that "the officers' arrests, the internal investigations of their conduct and their convictions occurred after the defendant's trial. Thus, evidence of the convictions did not exist and the

time of trial and could not have been introduced at trial." *Id.* at 713. Therefore, the court affirmed the defendant's conviction. *Id.* at 714.

In *State v. Bonillas*, a defendant who had been convicted of murder sought a new trial on the ground that a deputy sheriff who testified against him at trial was later found to have provided false information in a different matter. No. 2 CA–CR 2011–0299–PR, 2012 WL 252141, at *1 (Ariz. Ct. App. Jan. 27, 2012). The Arizona Court of Appeals rejected the claim: "[B]ecause the complaint against [the deputy sheriff] was initiated in October 2009, well after the trial in this matter took place in May 2009, the evidence in the report could not have been newly discovered." *Id.*; *see also State v. Bilke*, 781 P.2d 28, 29 (Ariz. 1989) (en banc) ("[To present a] colorable claim in a newly-discovered evidence case . . . the evidence must appear on its face to have existed at the time of trial but be discovered after trial.").

In the same manner, a New York appellate court affirmed the denial of defendant's motion to vacate his conviction based on newly discovered evidence. *See People v. Quan Hong Ye*, 92 A.D.3d 407, 407 (N.Y. App. Div. 2012). A detective who had been a principal witness against the defendant was later convicted of "serious charges" as a result of "corrupt conduct." *Id.* at 407. The New York court found that this could not be a basis for a new trial because the conduct "occurred after defendant's trial, and none of it was connected in any way with defendant's case." *Id.* Furthermore, "[t]he newly discovered evidence would have merely impeached the detective as to his general credibility," so the defendant could not show that the evidence would have caused a different verdict. *Id.*

Further, in *Commonwealth v. Burke*, the Massachusetts Appeals Court affirmed the denial of the defendant's motion for a new trial based on newly discovered evidence of posttrial events. No. 05-P-1694, 2006 WL

3422202, at *1 (Mass. App. Ct. Nov. 28, 2006). The defendant's conviction stemmed from assaults on and threats to his former girlfriend. *Commonwealth v. Burke*, No. 05-P-275, 2005 WL 3357959, at *1 (Mass. App. Ct. Dec. 9, 2005) (detailing the circumstances of the defendant's conviction on direct appeal). Subsequently, the defendant claimed that an allegedly false claim made by the victim against the defendant and his father for violating a restraining order constituted newly discovered evidence. *Burke*, 2006 WL 3422202, at *3. However, the court rejected this assertion, stating, "Because the report related to an incident that occurred four months after the trial had concluded, the evidence could not have materially aided the defense against the pending charges." *Id.*

Two more examples. In *State v. Martinez*, the Idaho Supreme Court affirmed the district court's denial of the defendant's motion for a new trial after he had been convicted of murder. 872 P.2d 708, 716 (Idaho 1994). The defendant had uncovered evidence that "raise[d] questions regarding [a key prosecution witness's] alleged drug and alcohol abuse, or lack thereof, and her motives for testifying against defendant, along with minor inconsistencies regarding the alleged murder plot." *Id.* The court found the evidence "involved minor testimonial inconsistencies and involved occurrences that took place after the trial and which would not have enabled the defense to change its approach toward a witness other than reputable." *Id.* Therefore, a new trial was not warranted. *Id.* Lastly, in *Harris v. United States*, the court rejected the defendant's motion for new trial and stated, "It is important to note that because the allegations on the part of Special Agent McKenna did not exist at the time of his testimony at Harris' trial, it would have been impossible for the Government to disclose such allegations of misconduct to Harris at that time." 999 F. Supp. 578, 581 & n.3 (S.D.N.Y. 1998).

For these reasons, I would affirm the district court's order denying discovery.

Waterman, J., joins this dissent.