# IN THE COURT OF APPEALS OF IOWA

————————————

No. 24-1858
Filed February 11, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Devin Michael Toler Sr.,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable David P. Odekirk, Judge.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Badding, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

1

**SANDY, Judge.**

This appeal arises from a jury's verdict finding Devin Toler guilty of child endangerment causing bodily injury to his infant son. The case does not turn on eyewitness testimony or a single catastrophic act. Instead, it rests on medical evidence, circumstantial proof, and the jury's assessment of competing explanations for a series of injuries suffered by a medically fragile child while in Toler's care. After careful review of the record, we conclude the district court did not abuse its discretion in denying Toler's motion for new trial, overruling his claims of prosecutorial error, imposing sentence, or entering a no-contact order. We therefore affirm.

## BACKGROUND FACTS & PROCEDURAL POSTURE

D.T. was born in September 2023 to Whitley Waggenhoffer and Devin Toler. He is Waggenhoffer's third child and Toler's first. Shortly before his birth, medical providers identified congenital kidney and heart conditions that required delivery at the University of Iowa Hospitals and Clinics. Following his birth by caesarean section, D.T. remained in the neonatal intensive care unit for approximately three weeks due to these conditions and related complications.

After discharge, D.T. required frequent medical monitoring and follow-up care, including cardiology appointments and a balloon valvuloplasty procedure in mid-October 2023. Shortly after that procedure, D.T. was re-hospitalized due to discoloration and swelling in his left leg, as well as gastrointestinal symptoms associated with anticoagulant therapy. Imaging performed during this hospitalization revealed a fracture to D.T.'s left femur, prompting consultation with the University of Iowa Child Protection Team. At that time, medical providers could not conclusively determine whether the femur fracture resulted from accidental manipulation

during medical care or from another source. D.T. was discharged again near the end of October. Follow-up visits that month noted no developmental concerns, though the cause of the femur fracture remained under investigation.

During the periods when D.T. was not hospitalized, Waggenhoffer was his primary caregiver and managed his medical appointments. Toler worked outside the home. Waggenhoffer testified that between late October and early November 2023, she left D.T. alone with Toler on two or three occasions, each lasting less than ninety minutes. During these outings, Toler contacted her repeatedly, expressing difficulty soothing the child and asking her to return home. Waggenhoffer testified that on one occasion after returning home, she observed scratches near D.T.'s ear that were not present when she left. Toler attributed the marks to self-scratching. Waggenhoffer later acknowledged uncertainty regarding the length of D.T.'s fingernails and whether the marks worsened overnight. She also testified that she once observed Toler pressing on D.T.'s eyes while attempting to feed him, though she could not quantify the amount of pressure applied.

On November 5, 2023, after returning home from one of her outings, Waggenhoffer noticed bleeding and bruising inside D.T.'s mouth while attempting to feed him. Toler suggested the injuries may have been caused by a pacifier. Following medical advice, Waggenhoffer brought D.T. to Allen Hospital, where providers conducted additional examinations and imaging. A skeletal survey and physical examination revealed multiple injuries, including an ulnar fracture near the elbow, a rib fracture, a fractured toe, and the previously identified femur fracture. Providers also documented subconjunctival hemorrhages in both eyes, abrasions in the mouth, a torn frenulum, and scabbing near the ear. The injuries appeared to be in varying

stages of healing. Based on the totality of the findings, medical providers suspected non-accidental trauma, and D.T. was transferred to the University of Iowa Hospitals and Clinics for further evaluation.

Dr. Roy Zhou of the Child Protection Team reviewed D.T.'s medical history, imaging, and laboratory studies and conducted an independent examination. He testified that although some injuries—particularly the femur fracture—could not be conclusively attributed to a specific cause, the overall pattern of injuries was traumatic and not explained by D.T.'s underlying medical conditions or by an accidental mechanism consistent with the history provided. Dr. Zhou testified that he could not diagnose child abuse as a medical determination but concluded that the injuries lacked a compatible accidental explanation.

Law enforcement and child-welfare investigators interviewed both parents. Toler denied causing harm to D.T. and attributed the observed injuries to self-scratching, feeding implements, or unknown causes. He stated that D.T. did not appear unusually fussy or injured while in his care. Investigators noted inconsistencies between explanations offered at different times, though no direct eyewitness testimony established the precise mechanism or timing of each injury.

The State charged Toler with child endangerment—multiple acts, a class "B" felony, and child endangerment causing serious injury, a class "C" felony. At the close of the State's case, the district court instructed the jury only on the multiple-acts count and its lesser-included offenses. The jury found Toler guilty of child endangerment causing bodily injury, a class "D" felony, in violation of Iowa Code section 726.6(6) (2023).

The district court imposed an indeterminate five-year term of incarceration and suspended the fine and surcharge. At the same sentencing hearing, the court revoked Toler's deferred judgment in an unrelated case and imposed concurrent sentences. The court also entered a five-year no-contact order prohibiting contact between Toler and D.T., finding such contact posed a threat to the child's safety .

Toler appealed. He challenges the weight of the evidence, portions of the State's closing argument, the sentencing court's consideration of alleged unproven conduct, and the scope and duration of the no-contact order.

## STANDARD OF REVIEW

The denial of a motion for new trial is reviewed for abuse of discretion. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). We also review claims of prosecutorial error for an abuse of discretion. *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017). "Our review of a sentence imposed in a criminal case is for correction of errors at law." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Yet, when a sentence is within the statutory limits, we review it for an abuse of discretion. *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018). An abuse of discretion is found when "the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable." *Id.* (citation omitted). Lastly, "[a] challenge to the reasonableness of a no-contact order is reviewed for an abuse of the trial court's discretion." *State v. Lynch*, No. 20-0075, 2021 WL 2453362, at *2 (Iowa Ct. App. June 16, 2021).

## DISCUSSION

### I.     Weight of the Evidence.

Toler contends the jury's verdict is contrary to the weight of the evidence and that the district court abused its discretion in denying his motion for new trial. We disagree.

A motion for new trial based on the weight of the evidence is governed by Iowa Rule of Criminal Procedure 2.24(2)(b)(6). A verdict is contrary to the weight of the evidence only when a greater amount of credible evidence supports a different outcome than the one reached by the jury. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). This standard permits the court to consider the credibility of witnesses, but it is also a demanding one—relief is appropriate only in the extraordinary case where the evidence preponderates heavily against the verdict such that a miscarriage of justice may have occurred. *Id.*; *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). In ruling on such a motion, the question is not whether the evidence was sufficient to support the verdict; rather, the court must determine whether more credible evidence supports an alternative verdict. *Ary*, 877 N.W.2d at 706.

The district court applied the correct standard and concluded the verdict should stand and the record supports that determination. The State presented evidence that D.T., a medically fragile infant, suffered multiple injuries in varying stages of healing, including fractures to the femur, ulna, ribs, and toe, as well as oral injuries, subconjunctival hemorrhages, and abrasions. Medical providers testified that, although not every injury could be conclusively attributed to a precise mechanism, the overall pattern of injuries was traumatic and inconsistent with accidental explanations or D.T.'s underlying medical conditions. Dr. Zhou testified the injuries lacked a compatible accidental explanation based on the history provided.

6

The jury also heard evidence regarding Toler's access to and care of D.T. during relevant time periods, including testimony that Waggenhoffer left the child alone with Toler on multiple occasions, after which she observed injuries not previously present. While Toler offered explanations suggesting accidental causes or self-inflicted injury, the court was free to weigh those explanations against the medical testimony, the timing of the injuries, and the evidence of repeated unexplained trauma. *See State v. Ernst*, 954 N.W.2d 50, 60 (Iowa 2021) ("While the weight-of-the-evidence standard allows the district court to make its own credibility determinations, a district court may grant a motion for new trial based on the weight of the evidence 'only if more evidence supports the alternative verdict as opposed to the verdict rendered.' The question for the court is . . . whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." (citations omitted) (alteration in original)); *accord Powers v. State*, 911 N.W.2d 774, 782 (Iowa 2018) ("In assessing a motion for new trial, the judge examines the weight of the evidence offered in the criminal trial, which includes a weighing of the credibility of the complaining witness.").

To be sure, the case did not include eyewitness testimony identifying the precise moment or mechanism by which each injury occurred. But the court was entitled to credit the medical evidence, the circumstantial evidence concerning Toler's access to the child, and the inconsistencies in the explanations offered. This is not the exceptional case where the evidence preponderates heavily against the verdict. *See Ary*, 877 N.W.2d at 706–07. The district court did not abuse its discretion in denying the motion for new trial, and we affirm on this issue.

## II.    Prosecutorial Error.

Toler argues the State committed prosecutorial error during rebuttal in its closing argument by mischaracterizing the evidence and urging the jury to consider a "power and control" dynamic between Toler and Waggenhoffer. He contends the argument invited speculation beyond the record and denied him a fair trial. We disagree.

To obtain relief, a defendant must establish both misconduct and resulting prejudice—meaning the challenged conduct so infected the trial with unfairness as to deny due process. *Plain*, 898 N.W.2d at 818. Reversal is warranted only in exceptional cases.

Prosecutors are afforded considerable latitude in closing argument. *Id.* They may draw reasonable inferences from the evidence and respond to defense theories, so long as they do not misstate the record or invite the jury to rely on matters outside the evidence. *Id.*

Even assuming without deciding that the State's comments during closing argument approached the outer limits of advocacy, Toler cannot demonstrate prejudice. The remark was isolated and brief, the jury was properly instructed that closing arguments are not evidence, and we presume the jury followed those instructions. *See id.* The overall corpus of evidence was extensive. Moreover, the jury's verdict—convicting Toler only of a lesser-included offense—reflects careful deliberation rather than an emotional or inflammatory response. Because the State's argument did not prejudice Toler, the district court did not abuse its discretion in overruling the objection.

## III. Consideration of Unproven Conduct at Sentencing.

Toler claims the court improperly considered the "details from the complaints filed in his previous convictions" that were included in the PSI, and those details are unproven conduct. At sentencing the court explained:

> The Court has considered the request for deferred judgment today, and considering the factors set forth in the Iowa Code, namely in this case the nature of this crime, the information set forth in the presentence investigation report concerning [Toler]'s history, which does include a history of violence, the Court bases its finding that deferred—a deferred judgment is not appropriate in this case and I will deny the request for deferred judgment. The Court, knowing of no legal reason why judgment shouldn't be pronounced today, it is hereby ordered and adjudged that [Toler] is guilty of the lesser-included offense of child endangerment causing bodily injury, a Class D felony, in violation of Iowa Code Section 726.6(6). In pronouncing judgment and sentence today, the Court has considered the factors set forth in the Iowa Code, I have considered the arguments of counsel and their recommendations today, the information set forth in the presentence investigation report and its recommendations, the impact statements which were attached thereto, [Toler]'s statements today on the record, again, the nature of the offense, [Toler]'s age, prior record, employment, family circumstances, all of which was set forth in the PSI that I have referenced. In considering the sentencing options today available to the Court, the Court determines that the sentence which would provide the maximum opportunity for rehabilitation for Mr. Toler and for the protection of the community from further offenses by [Toler] and others is that as recommended by the State. I therefore will sentence [Toler] to a term of imprisonment not to exceed five years. The $1,025 fine and 15 percent surcharge will be suspended.

The court's statement that Toler's criminal record "does include a history of violence" is supported by Toler's criminal convictions alone. Indeed, he was convicted of domestic abuse assault causing bodily injury—a crime that is inherently violent. Nothing in the court's remarks indicates it relied on disputed allegations or unproven conduct. The court did not reference factual allegations from charging documents, dismissed counts, or

unadjudicated conduct. Nor did it cite the narrative details underlying prior offenses. Instead, the court permissibly characterized Toler's criminal history based on established convictions reflected in the PSI.

Iowa law draws a clear distinction between impermissible reliance on mere accusations and permissible consideration of a defendant's criminal history as reflected in convictions. *See State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998) (holding a sentencing court may not consider an unproven or unprosecuted offense unless the facts before the court show the defendant committed the offense or the defendant admits it). Toler points to the inclusion of complaint narratives in the PSI, but the mere presence of such information does not establish improper reliance. As *Witham* makes clear, error arises only when the record affirmatively demonstrates the court relied on unproven or unprosecuted conduct in imposing sentence. *Id.* at 679 n.1. This record contains no such indication.

## IV.  No-Contact Order.

Toler contends the district court abused its discretion by imposing a five-year no-contact order prohibiting contact with his infant son, D.T. We disagree.

Iowa Code section 664A.5 authorizes a sentencing court, upon the defendant's conviction for a qualifying offense, to impose a no-contact order for up to five years. The statute does not require an express finding that the defendant continues to pose a threat to the victim; the conviction itself supports the court's authority to act. *Lynch*, 2021 WL 2453362, at *4. The court was not required to accommodate speculative reunification efforts or

fashion a lesser restriction. *See id.* at 3. Because the five-year no-contact order was authorized by statute the district court did not abuse its discretion.

**AFFIRMED.**